JUDGE LINDSAY
delivered the opinion oe the court.
Appellee charges specifically that Halbert obtained, without right, $90.68 of the amount due for the years 1871-72 from the common-school fund to District No. 8, in Lewis County; that he had refused upon demand to account for said sum; and that a right of action against him was vested in appellee by the act of assembly approved March 12, 1872.
It is further alleged that a common-school was regularly taught in the district for the years named, under the supervision and control of the trustees duly constituted, elected, and appointed; that the school was reported to the superin *261 tendent of public instruction, and that the sole reason why the amount sued for was not received by appellee, and paid over to the teacher employed, as before stated, under the provisions of the common-school law, was the unlawful interference of appellant in obtaining and refusing to account for it. None of these allegations are denied; but appellant claims that he had the right to receive the money, and that he paid it out in accordance with the provisions of an act of assembly approved 12th of January, 1872, all of which was done before the passage of the act under which this action was instituted. His answer is essentially a plea of confession and avoidance.
The act of January 12, 1872, which is set out in full, recites that the superintendent of public instruction .had decided that there were no legally elected trustees in District No. 8, in Lewis County, and that Halbert, as president of the Nanceburg Male and Female Academy, could take charge of the common-school for that district, have it taught, and draw the public school-money to which it was entitled; that two schools had been partly taught; that all children in the district of proper age were invited to attend (and that a majority of them did attend) the school free of charge; but that the superintendent was then of opinion that these schools could not draw any part of the school-fund without further legislation. Wherefore it was enacted that said schools should be entitled “ to one half the money due and to become due said common-school district,” and the superintendent was directed to draw his warrant on the state treasurer for said sum. in favor of W. C. Halbert to pay the teacher who had taught and was teaching the common-school at the school-house in Nanceburg.
The question raised by the demurrer to Halbert’s answer is whether or not this act affords him protection. It does not appear that he was directly instrumental in procuring its passage ; but it is charged by appellee, and not denied by him, that on the day of its approval he interfered and obtained the *262 money in controversy. The answer further concedes, by failing to deny, that a common-school was regularly taught in the district during the year for which this money was due, under the supervision and control of duly constituted and elected trustees. The act recites that the superintendent had decided that these trustees were not legally elected; but this recital of this officer’s opinion, even if it had been embodied in the answer as part of it, would not be a sufficient denial of the direct charge in the petition.
It is not material whether the teacher employed by these regularly constituted trustees acquired by his employment a vested right to the money due the district. We are of opinion that, whatever may be the law upon this question, Halbert had no right to receive any part of the money, and that its having been paid out by him under the provisions of the act of January 12, 1872, is no defense to this action.
Article 11 of the state constitution, after setting out the various funds thereby set apart to constituté a common-school fund, provides that these, “together with any sum which may hereafter be raised in the state for purposes of education, shall be held inviolate for the purpose of sustaining a system of commonsehools.”
' The act in question devoted a portion of the school-fund to the payment of teachers not acting under the control or supervision of the officers of the common-schools, but who taught under contracts made with a private individual. The amount thus taken, or attempted to be taken and appropriated, was not used for the purpose of sustaining the system of common-schools contemplated by the constitution and established by the legislature, and its direct effect has been to deprive the officers acting under that system of the power to carry it into successful operation in the school-district entitled by the common-school law to this moneji. The General Assembly has the undoubted power to pass laws regulating the manner in *263 which the common-school fund shall be devoted to the purposes for which it has been set apart; but these laws, as far as practicable, should be general in their application. Special legislation, which does not come in aid of the general system, or to relieve against hardships growing out of its provisions, or of the neglect or default of the officers by whom it is administered, and especially such as interferes with these officers in the discharge of their duties, or takes from them the right to control the funds set apart to the counties or districts for which they are acting, is calculated to destroy the system of common-schools which the constitution declares shall be maintained.
If the unauthorized action of Halbert can be ratified, and the school-money due to a district in Lewis' County turned over to him and his employees, instead of being paid out to those entitled to it under the general law, the same thing can be done in every district in the state, and the system of common-schools practically destroyed.
We are of opinion that the portion of the school-fund paid out to Halbert can not be held inviolate for the support of our system of common-schools unless he be compelled to pay it over to the commissioner of common-schools for Lewis County.
The demurrer to his answer was properly sustained, and the judgment against him is affirmed.