Syllabus—Statement.

# 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

## STATE FEMALE NORMAL SCHOOL v. THE AUDITORS.

### July 24, 1884.

1. CONSTITUTIONAL—*Female Normal School Act.*—The act approved March 7th, 1884, entitled "An act for the establishment of a State Female Normal School, was within the legislative powers of the general assembly. And the latter had the power to appropriate *out of the treasury* the annual sum of ten thousand dollars for the support of that school, but not to appropriate it out of the fund set apart by the constitution for the maintenance of the public free schools of the state.

2. CONSTRUCTION OF STATUTES—*Idem.*—By its act of March 7th, 1884, the general assembly appropriated ten thousand dollars to be paid annually to the State Normal Female School at Farmville out of the public free school fund, and the second auditor, who has control of that fund, cannot be compelled to pay said annuity. It was not made payable out of the treasury, and hence the auditor of public accounts cannot be compelled to pay the same.

Upon petition of J. L. M. Curry, W. H. Ruffner, H. H. Harris, R. M. Manly, L. R. Holland, John L. Buchanan, L. A. Michie, F. N. Watkins, S. C. Armstrong, William B. Taliaferro, George O. Conrad, W. E. Gaines, W. W. Herbert, and R. R. Farr, superintendent of public instruction, constituting the board of trustees of the State Female Normal School at Farmville, representing that, by an act of the general assembly of Virginia, approved March 7th, 1884, a normal school was established for the education of white female teachers for public schools, and the petitioners were named as trustees therefor; that the town of Farmville having conveyed to the state the

Farmville female college for the use of said school; and the said trustees organized as a board; that the board having applied to the auditors of the state for a warrant on the treasurer of the state for the sum of ten thousand dollars, appropriated by the seventh section of said act, to be paid annually out of the treasury for the purposes of said school, such application was refused by each of said auditors, and praying for a *mandamus nisi* against said auditors, or one of them, to compel the issuance of a proper warrant. The opinion states the other facts.

*W. W. Henry*, for the petitioners.

*Attorney-General F. S. Blair*, for the auditors.

LACY, J., delivered the opinion of the court:

On the 7th day of March, 1884, the general assembly passed an act establishing a normal school for the training and education of white female teachers for public schools.

The management of this institution is placed under the supervision of certain named trustees, who constitute a board of which the superintendent of public instruction is declared to be *ex officio* a member.

The sum of five thousand dollars is appropriated to defray the expense of establishing and continuing this school, to be expended under the direction of the trustees, upon whose requisition the governor is authorized to draw his warrant upon the treasury. The act then provides as follows:

"§ 7. There shall be appropriated annually out of the treasury of the state the sum of ten thousand dollars to pay incidental expenses, the salaries of officers and teachers, and to maintain the efficiency of the school; said sum to be paid out of the public free school fund."

The five thousand dollars provided for by the sixth section was paid on application out of the treasury, but upon applica-

tion to the second auditor for payment of the ten thousand dollars out of the public free school fund, payment was refused, because he was advised by the attorney-general the said sum of ten thousand could not, under the constitution of Virginia, be properly chargeable on the public school fund.

Application being then made to the auditor of public accounts for payment of the said sum, payment was declined, because there was no authority given by the act to this officer to pay the said sum.

Whereupon the trustees of the said normal school applied to this court for the writ of *mandamus,* to compel the said auditors to pay this sum out of the fund under the control of either the one or the other.    Whereupon it was ordered that Morton Marye, first auditor of the state of Virginia, and F. G. Ruffin, second auditor of the state, after being previously served with a copy of the order, appear before this court on the first day of this term and show cause why the commonwealth's writ of *mandamus* should not be awarded the petitioners, to command the said auditors as such, or one of them, to issue to F. N. Watkins, treasurer of the board of trustees of said state female normal school a proper warrant on the treasurer of the state for the said sum of ten thousand dollars.

To this order return is made according to the foregoing statement, by both the first and second auditors.

And the question is submitted to this court whether the said auditors, or either of them, shall be required by the order of this court to pay the said sum of ten thousand dollars out of the public funds under their control respectively.

The right of the general assembly to establish normal schools is not denied, but admitted.    The wisdom and utility of such an establishment is commended by all concerned.    But the first auditor contends that as to him there is no authority whatever in the act for him to pay the said sum, the act having expressly made the appropriation out of the funds of another office, and as to him it seems that there can be no serious difference of opinion.    The legislature had undoubted power to make the ap-

propriation out of the general funds in the treasury of the state, but no such appropriation is made, and the said first auditor is without authority of law to pay out this sum in the direction indicated.

As to the second auditor and the funds in his department belonging to the public free-school fund, the constitution provides, article VIII, § 8 : " The general assembly shall apply the annual interest on the literary fund, the capitation tax provided for by this constitution for public free school purposes, and an annual tax upon the property of the state of not less than one mill nor more than five mills on the dollar, for the equal benefit of all the people of the state, the number of children between the ages of five and twenty-one years, in each public free school district being the basis of such division."

This fund is thus set apart by the constitution for public free school purposes, to be for the equal benefit of all the people of the state, and to be ratably divided among the public free school districts of the state upon the basis of the children therein.

The second section of article eight of the constitution establishes a board of education, and then provides that, " This board shall have, regulated by law, the management and investment of all school funds."

Under this article of the constitution then, this public free school fund is not only dedicated to the public free schools of the state, but it must be managed and invested only by the board of education of the state.

The third section of the same article provides that, "The general assembly shall provide by law, at its first session under this constitution, a *uniform* system of public free schools, and for its gradual, *equal* and full introduction in all the counties of the state."

The fifth section provides that, "The general assembly shall establish, as soon as practicable, normal schools, and may establish agricultural schools, and such grades of schools as may be for the public good."

It is clear that the normal schools provided for by the consti-

tution, are intended to be part of the educational system of the state; but if they are to be considered as part of the public free school system, they are required by the constitution to be uniform, and as to each school district equal upon the basis of school children therein, and by the said third section their equal and full introduction into all the counties of the state is required.

By the constitution the legislature is required to establish normal schools, and is authorized to establish agricultural schools and such grades of schools as the legislative wisdom shall commend, to foster all higher grades of schools under its supervision, and to provide for such purpose *a permanent educational fund.* Under our system of government, the legislature is vested with all the legislative power of this commonwealth; therefore we do not go to the constitution to find granted powers for our legislature. In the exercise of the legislative powers of this commonwealth, the legislature is supreme and may in its wisdom do any act not forbidden in express terms by the constitution, which is the higher law, or which is not therein forbidden by necessary implication. So the power of the legislature to create a select public school, and to endow it and foster it out of the public treasury, cannot be questioned, even though such school should not appear to come within any provision of the constitution in express terms. Therefore no one can question the power; and few will be found to question the wisdom of the legislature, when it creates and endows a school of higher grade for the education of white female teachers. By the act in question the fund to defray the expense of establishing and continuing this school was appropriated out of the treasury to be paid upon the warrant of the governor of the state.

The annual sum of ten thousand dollars, under the seventh section is appropriated out of the treasury when the following words appear in the act: "said sum to be paid out of the public free school fund." It may be that in the original draft of the bill, these words did not appear, and that they were added by way of amendment. It does not appear from the act why a

part of the funds appropriated to this school are drawn from one fund and a part from another fund. But however that may be, the legislature has provided that this sum shall be drawn out of the public free school fund and delivered to the petitioners here, J. L. M. Curry and others, constituting a board of trustees for this school, to be by them managed and invested under the act in question, for the benefit of this school.

Now, from what we have said, it is clear that the legislature had the power to do this, unless prohibited by the constitution. We have seen that under the second section of the eighth article, the constitution requires that this public free school fund shall be under the management of the board of education, to be managed and invested by the said board in a manner to be regulated by law. Can the legislature take any part of this public free school fund and place it under other management, however judicious, without violating the plain terms of the constitution? Can this court issue its peremptory writ of *mandamus* commanding the second auditor to place this fund at the disposal of others, however wise and capable, without itself violating the constitution?

This public free school fund has been set apart by the constitution of the state, and dedicated to the public free schools in the manner therein set forth for the equal benefit of all the people, not to be disposed of and distributed by the legislature as by it shall be considered best, but to be distributed for the *equal benefit* of all the people of the state, the number of children between the ages of five and twenty-one years *in each public free school* district being the basis of such division. That is, every child in this commonwealth of such age is entitled to have the benefit of exactly the same amount in the division of the fund among the districts, and this fund once apportioned, is to be managed and invested by a board of education, composed of the governor, the attorney-general, and the superintendent of public instruction, all constitutional officers, and composing a board created by the constitution.

Can the legislature place any part of this fund under other control than that provided for its management by the constitution? Can the legislature, in the exercise of its general powers, make other division or distribution of it than such as the constitution has commanded for the equal benefit of all the people, the number of children between the ages of five and twenty-one years in each free school district, being the basis of such division? Can the dedication of ten thousand dollars annually of this fund to a school to be under the management of a board of trustees other than the board of education, be said to be a division of this fund in obedience to the mandate of the constitution?

These are questions we are constrained to answer in the negative.

We think the constitution has dedicated this fund to the public free schools of the state, and intrenched behind its bulwarks, it is beyond the reach of the legislature for any other purposes whatever.

To this end it should be ever kept sacredly apart from other state funds, and justly and fully applied year by year to the maintenance of the public free schools of the state, for the equal benefit of all the people of the state, to be ratably distributed among all the free school districts of the state.

But while this court is restrained by the constitution from issuing its writ to compel the second auditor to divert this public school fund from the public free schools of the state, to which it is dedicated by the express terms of that instrument, this court is not called upon to do more than to withhold its writ upon that ground, and is not called upon to declare the act unconstitutional, except in that particular. It would be carrying the principle too far to hold the act in question void merely for the reason that the appropriation for the support of the school could not legally be made out of the fund designated. If there had been a total want of power in the legislature to make any appropriation for its support, there would be strong ground for holding that the entire scheme should fail; but so long as the legislature has the requisite power to carry into effect the

general design of the act, though it may have erred in matter of detail in designating the fund out of which the support of this school should be drawn, yet, as the remedy is easy, it should not be held to defeat the whole act and all the proceedings under it. The objection to the present act is not that the legislature cannot provide for the support of this school, but that they have designated the wrong fund out of which the support is to be drawn. The implied obligation to provide for its support still remains. By establishing this school, and inducing contributions from others for that purpose, it has assumed the duty of supporting it. And if the particular provision which it has attempted to make for such support is objectionable, it must be assumed that the legislature will regard it as their duty to provide a substitute. *Gordon* v. *Cones and others*, 47 N. Y. R.

In this case the legislature has established this school, and provided the means of doing this out of the treasury. The town of Farmville has contributed the necessary situation and buildings as required by the act; and it cannot be doubted that the legislature in its wisdom will provide the necessary annual fund out of the general funds in the treasury, and the scheme for the establishment of the school suffer no serious detriment. But although the object is praiseworthy, and the end in view one greatly to be desired, these considerations can furnish no sufficient reason for diverting the public free school fund from the use designated for it by the constitution.

The legislature cannot under our constitution use or divide and distribute the public free school fund except as is provided by the constitution; and in like manner this court is without authority to use its writ to the same end. The second auditor of the state has properly refused to pay the sum in question out of the free school funds for the purpose desired by the petitioners, and the writ must be denied.

LEWIS, P., and HINTON, J., dissented.

MANDAMUS DENIED.