# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## HALL'S FREE SCHOOL TRUSTEES V. HORNE.

### MAY 7TH, 1885.

CONSTITUTION—*Public free school system.*—Hall's Free School, incorpo-
rated by act of assembly passed February 6th, 1846, is no part of the
uniform system of public free schools contemplated by the constitution;
and, therefore, the act of assembly approved December 1st, 1884, (Acts
Extra Session, 1884, page 173) providing that the superintendent of
public schools in the county of Hanover should pay over in each and
every year, commencing with 1884, out of the school quota for Beaver
Dam district, in the said county, to the trustees of Hall's Free School,
a sum equal to the salary paid to any teacher of a school in said district
having a like attendance of scholars, to be by them applied to the
support of said Hall's Free School, is unconstitutional and void.  *State
Female Normal School* v.  *The Auditors,* 79 Va. 233.

Upon petition of William Nelson and six others, trustees of
Hall's free school in Beaver Dam district in Hanover county,
for a writ of *mandamus,* to compel R. R. Horne, treasurer of
said county, to pay to them, as such trustees, the sum of $150,
to be applied to the benefit of said Hall's Free School, in pursu-
ance of act of assembly passed February 6th, 1884.  Acts Ex-
tra Session, 1884, page 173.

Opinion states the case.

*Thomas N. Page* and *H. T. Wickham,* for the petitioners.

*Sands, Leake & Carter,* for the respondent.

LEWIS, P., delivered the opinion of the court.

This is an application for a writ of *mandamus,* to compel the respondent, the treasurer of Hanover county, to pay to the petitioners the sum of one hundred and fifty dollars.   The claim of the petitioners is founded on an act of the general assembly, approved December 1, 1884.   The act provides as follows: "That the superintendent of public schools of the county of Hanover, be and he is hereby directed to pay over in each and every year * *, out of the school quota for Beaver Dam district, * *, to the trustees of Hall's Free School, a sum equal to the salary paid to any teacher of a school in said district, whose school. has a like attendance of scholars, to be by them applied to the support of said Hall's Free School."   Acts, Extra Session, 1884, p. 173, *et seq.*

The respondent insists that the money demanded by the petitioners is part of the public school fund for the county of Hanover, raised by taxation, and from other sources, as provided for by the constitution; that the fund so raised cannot lawfully be diverted from the support of the public free schools and devoted to any other purpose; that Hall's Free School is not a part of the uniform system of public free schools contemplated by the constitution, and that therefore the act relied on is unconstitutional and void.

We are of opinion that this defence is well-founded, and that the demurrer to the petition must be sustained.   It appears that the trustees of Hall's Free School were incorporated by an act of assembly, passed February 6, 1846, intended to give effect to the will of. Aaron Hall, then lately deceased, and who, in his lifetime, was a resident of Hanover county.   In the language of his will, the testator devised and bequeathed a portion of his estate "to establish a free school in the neighborhood of my residence, in order that the youth of my acquaintance may enjoy the benefit of the school, and to be under the entire management of my executors."   By the provisions of the act, the trustees

(seven in number), were authorized to receive from the executors the fund so devised and bequeathed, which when received they were directed to invest, in the name of the corporation, in some one or more of the stocks of the state of Virginia, bearing six per cent. interest, and annually or semi-annually to collect the interest or dividends upon the same." The trustees were also directed to establish the school, to employ a teacher or teachers to conduct the same, and to prescribe the branches of learning to be taught therein. Authority was also given them to fix the boundaries of the district within which resident children should be entitled to admission into the school free of charge; to make by-laws and regulations for the government of the school; and to fill any vacancy occurring in their own body from death, resignation, removal out of the county, or otherwise. The act also required the school commissioners of Hanover to pay to the teacher or teachers of the school a fair and equitable portion of the school quota of said county, according to the number of poor children contained in the free school district, to be in lieu of the compensation allowed by the laws then in force for teaching the poor children resident in the said district. And finally, it was provided that the said trustees, or their successors, should annually make to the president and directors of the literary fund a report showing the number of children taught, and at what expense, and also the condition and profits of the fund under their management. Acts 1845–'46, p. 108.

It will thus be seen that the powers conferred on the trustees are of the most comprehensive character. In short, the school is placed under their exclusive supervision and control, subject only to the limitation expressed in the act, that the rules and regulations for its government shall "not be contrary to the laws of this state or of the United States."

It is obvious, therefore, that it is no part of the public free school system of the state, and that it differs therefrom in many and marked particulars. In the first place, the constitution in

express terms declares that the public free school system for which it provides shall be uniform. In the second place, it provides for a superintendent of public instruction, to have "general supervision of the free school interests of the state;" for a board of education, and for subordinate officers, to whose management and control the system when established was to be confided. And in the next place, the funds for its support are required to be appropriated "for the equal benefit of all the people of the state," the basis of division being "the number of children between the ages of five and twenty-one years, in each public free school district." Const., Art. VIII.

It is true, that after the passage of the act of December 1, 1884, a resolution was adopted by the petitioners, whereby it was ordered that article 17 of the by-laws of the school be altered, so as to read: that "the ages of children admissible into the school-roll be from five to twenty-one years." But the fact remains that the boundaries of the school district are fixed by the trustees, and that the school is none the less subject to their control.

Other points of difference might readily be mentioned, but it is unnecessary to do so. Nor is the case affected by the provisions in the act of 1846, requiring the county commissioners to contribute to the support of Hall's Free School, and requiring the trustees to report annually to the president and directors of the literary fund. The character of the school was not altered by those requirements, and, moreover, they ceased to be operative upon the introduction of the present free school system.

It is needless to inquire whether it would be competent for the legislature to declare this school a part of the public free school system, and to appropriate its funds accordingly. It is sufficient to say that no such attempt has been made, and that by an act, in force April 2, 1873, it was expressly enacted that the fund belonging to the Aaron Hall Free School should not be subject to, nor affected in any manner by, the provisions of section six of an act, approved February 21, 1872, vesting, with

certain qualifications, in the school boards of the various counties of the state all donations for school purposes which had theretofore been made, or which might thereafter be made, by will, deed, or otherwise. Acts 1871–72, p. 81, *et seq.;* Acts 1872–73, p. 352. The latter act, it seems, was passed at the instance of the trustees themselves, who since that time have continued in the exclusive and undisturbed control of the school and its property.

There is no doubt as to the merits of the school, and the benefits resulting from its operations to the people in its neighborhood. It is also true that many of those whose children attend it are tax-payers, of whom school taxes are annually collected, which go to the support of other schools. But these considerations can have no weight in determining the legal question involved in the present case; that must be determined with reference to the provisions of the constitution alone; and as in our judgment the act in question is repugnant to the constitution, the latter must prevail.

The subject has recently been considered by this court, and with the same result, in the case of the *Trustees of the Normal School* v. *The Auditors,* 79 Va. 233. What is said in that case is conclusive of this, and the rule must therefore be discharged.

MANDAMUS DENIED.