Underwood v. Wood, &c.

93   177
113   243

CASE 28—PETITION EQUITY—MAY 5.

## Underwood v. Wood, &c.

APPEAL FROM TAYLOR CIRCUIT COURT.

1. IMPROPER DIVERSION OF COMMON SCHOOL FUND.—The Legislature
has no power to  divide the common school fund in a particular dis-
trict and approriate a part of it to the payment of teachers in a private
school, relieving the parents of the children which attend that school
from the burden of maintaining and keeping in repair the common
school buildings.   The fact that the common school building is not
large enough to accommodate all the children in the school district does
not authorize such legislation, as it is the duty of those in charge of
the common school to furnish a sufficient building.

2. INJUNCTION.— The teachers of a common school under a contract with
the trustees may, although there has been only a partial performance
of their contract, maintain an action in equity to enjoin the county su-
perintendent from paying over the common school money to persons
who are claiming it under a void act of the Legislature.   The fact that
the superintendent is perfectly solvent and able to meet any claim as-
Vol. 93—12

serted against him by the teachers does not deprive them of the right to an injunction to prevent a misappropriation of the trust fund.

3. PARTIES TO ACTION—APPEARANCE.—Appellees, who were required by order of the court to appear and assert their claims, if any, to a fund in controversy, entered their appearance by filing special and general demurrers, and having thus made themselves parties they will not be heard to object to the proceeding, upon the ground that they were not made parties.

R. S. MONTAGUE, SAMUEL AVRITT·FOR APPELLANTS.

1. The county superintendent had no right to require appellants to litigate with the teachers and officers of Taylor Academy. Section 30 of the Civil Code is not applicable to this action.

2. The act incorporating the Taylor Academy violates section 37 of article 2, of the old Constitution, because it relates to more than one subject, and only one of the several subjects to which it relates is expressed in the title. (Hind v. Rice, 10 Bush, 528; Rushing v. Sebree & Wife, 12 Bush, 199; Jones v. Thompson Ex'or, 12 Bush, 594.)

3. The act is also in violation of section 1, of article 11, of the Constitution, which protects and holds inviolate the common school fund. (Halbert. v. Sparks, 9 Bush, 259; Collins v. Henderson, 11 Bush, 74.)

4. The act of incorporation also violates the fundamental principle of our form of government requiring taxation to be equal. (Town of Bellepoint v. Pence, 13 Ky. Law Rep. 371.)

KNOTT & EDELEN, JAMES GARNETT, CHARLES PATTESON, J. R. ROBINSON, FOR APPELLEES.

1. Before teachers can sue the county superintendent for their salary out of the school money, they must have a certificate from the trustees that they have performed the services. (Sec. 2, act May 4, 1888, amending the school law.) This is not averred.

Again, their contract must be in writing (sec. 9, art. 9, act 1888), and where a contract is required by law to be written, a petition on such contract must aver that it was in writing. (Smith v. Fah, 15 B. M., 443; Hocker v. Gentry, 3 Met., 463; Byassee v. Reese, 4 Met., 373; Smith v. Theobald, 86 Ky., 141.)

2. The threatened injury is not irreparable, and, therefore, injunction does not lie. Any unauthorized misappropriation by the county superintendent of the school fund would leave him liable on his bond. (Pryse v. Titus, 11 Ky. Law Rep., 654.)

An irreparable injury is one which can not be measured by a mere money standard. (Puckette v. Hicks, 39 La. Ann., 901.)

3. The subject of the act incorporating Taylor Academy is sufficiently expressed in the title. (Phillips v. Cov. & Cin. Br. Co., 2 Met., 219; Rogers v. Jacob, 88 Ky., 502; 3 Met., 569; 8 Bush, 353; Id., 453; 79

Ky., 573; 80 Ky., 221; 81 Ky., 270; 83 Ky., 67; *Id.*, 364; 85 Ky., 412; 86 Ky., 426.)

4. The act incorporating Taylor Academy was obviously intended to relieve against the hardships of the inadequate school accommodations in districts 24 and 25, and, hence, was within the rule of Halbert v. Sparks, 9 Bush, 263.

5. The third section of the act as to the validity of which there is some doubt, may·be entirely eliminated from the act, without at all affecting the question involved in this appeal.

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

J. R. Robinson, a resident of the county of Taylor, being interested in having good schools in his county, and particularly within the district in which he lived, erected, at his own expense and on his own land, a large school building, sufficient to accommodate and seat comfortably more than one hundred and fifty pupils. He had the institution chartered and called the Taylor Academy. It was and is a higher grade of school than the ordinary common schools of the State, and the evident purpose of this ph'lanthropic man was to elevate the standard of education in his county, and benefit his people by furnishing from his academy teachers better qualified for teaching than is usually found in the common schools. If this case only involved the question of liberality and benevolence on the part of Robinson, the judgment below would at once be affirmed, but other questions are presented, and among them one involving the right of the Legislature to take a part of what is known as the school fund of the State from one of the school districts of Taylor county, and appropriate the money to the payment of the tuition of certain children living within the school district, but taught under a special contract by the teachers of the Academy, that contract being made with Robinson, the principal teacher and owner of the college building.

The act incorporating the Academy, in substance, provides, that Robinson may contract with the parents of children residing within this common school district for teaching their children, and the parent or parents making such contracts, paying, doubtless, a higher price than the amount of the ordinary school tax, are exempt from the burden of maintaining, furnishing or repairing any school house for and during the school years their children may be sent to the Taylor Academy. There are not less than three hundred and fifty children within the common school district (two of the districts having been consolidated), and out of this number, by the provisions of the act, Robinson can select such as he may desire to attend his school, by making a contract with their parents, and having done so, these children attending the Academy get their part of the common school fund to be paid to the teachers of the college, and in this manner diverting the fund from the common school to the payment of teachers in an individual enterprise, and relieving its patrons who live within the district from the burden of taxation imposed for building and keeping in repair the school buildings erected for common school purposes.

In the case of Halbert v. Sparks, reported in 9 Bush, 259, this court held that the school fund could not be appropriated in such a manner. This case, however, is a more palpable violation of the provisions of the Constitution in reference to the school fund than Halbert v. Sparks.

The patrons of the college within the district who send their children to the Academy are relieved from the burden of maintaining and keeping in repair the school buildings, and in the second place they are given the benefit of the school fund in proportion to the number of

children sent to the Academy, the number not to exceed one hundred. It is also reasonable to assume that the parents of the children attending the Academy are in a better condition to assume the burden of taxation imposed to aid in building school houses, than those whose children are attending the common school.

The principal of the Academy, being left to contract with the parents, would, of course, select those who are able to pay, and when relieving them from taxation, and, at the same time, giving them a part of the school fund, places the burden of building and repairing school buildings for common school purposes upon those who are less able to pay, and might result in having no school building for those who are unable to attend the college. The position that the school building is not sufficient in dimensions to accommodate all the children, and for that reason the Legislature had the power to divide the fund, can not be sustained. If not sufficient, those in charge of the common school should make it so, and to allow the legislative department of the Government to divide the fund in such a mode when, in the opinion of those interested the school buildings were insufficient, would be subversive of the whole school system.

If a case could exist where such legislative action would be sanctioned, it is found in the case before us, but when ample remedies are afforded by the law regulating common schools, to prevent such results as is now attempted to justify this character of legislation, there is no reason for establishing a precedent that must, if followed, destroy the very existence of common schools. This court has held in several cases that where graded schools have teachers under the control of the common school trustees,

and where all children have the benefit of the school within the district, the fund may be appropriated to the payment of the teachers. In this case the trustees have no voice in the election of the teachers, nor can any child go to the Academy as a pupil without paying tuition, and, in fact, the legislative act has applied the school fund to be used by a private institution. These appellants were the teachers of the common school within the district, and ascertaining that the superintendent had determined to pay this money to the teachers of the Academy, filed their petition in equity, alleging they were then teaching this common school under a contract with the trustees, and asking that the superintendent be enjoined from paying over this money to the Academy.

Wood, the superintendent, was alone made a defendant. He appeared and filed an affidavit, stating that he had no interest in the matter, but that the teachers of the Academy were claiming the fund, and he was willing to pay it over as the court might direct. Upon the filing of this affidavit the court made an order requiring the teachers in the Academy, naming them, and Robinson, to appear and assert their claim, if any.

They did appear by filing special and general demurrers to the petition. The special demurrer was for want of proper parties in not making them defendants. Their appearance to the action made them defendants, and having appeared, contesting the claim of the appellants, the action by reason of the affidavit of the superintendent, Wood, was in the nature of an interpleader, and was so treated by the court and a judgment rendered dissolving the injunction and directing the superintendent to pay the money to the teachers of the Academy. If they,

the appellees, were not parties no judgment should have been rendered for them, but having made themselves parties, not only by their demurrers but by answer, they were properly before the court. They will not be allowed to demur and then say they were not parties to the action.

The sole question, it seems to us, in this case, arises as to the power of a court of equity to grant relief by way of injunction in such a case. It is said that Wood, the superintendent, would be liable on his bond if he paid the money over to the party not entitled. This can scarcely be so when the parties are before the court and a judgment directing him to pay the money to the trustees or the teachers of the Academy. It is insisted that the general demurrer should have been sustained. We think not. The superintendent held this money or was entitled to receive it as trustee for these teachers. An act had been passed directing its payment to some one else, and from the averments of the petition, the superintendent had announced his purpose to pay it as directed. And a court of equity having control of such funds, especially when they are about to be divided, may be applied to in order to prevent a misappropriation, although the trustee may be perfectly solvent and able to meet any claim asserted against him by the beneficiaries. The case as presented is simply this: The trustee comes into court and offers to pay it as may be ordered. The parties contesting the right of the appellants enter their appearance, and it is adjudged they and not the appellants are entitled to the money, and it is ordered to be paid over. It is a contest between two claimants of a fund then in the hands, or about to reach the hands, of the superintendent, who has no interest in the controversy. The court de-

cides in favor of the one and against the other. The appellants allege they were then teaching the school under a contract with the trustees. The contract was in writing, signed by the trustees, and was certainly sufficient, when they, the teachers, were in the actual execution of the agreement.

The petition was good, and the appellants entitled to the money, if they fulfilled their contract, and this may be evidenced by the certificate of the trustees, who are the interested parties in this case. It is true that there had been only a partial performance when the action in equity was instituted. The term had not fully ended, still the fund out of which they were to be paid was devoted to another purpose by a legislative enactment that was void, and they had the right to go into a court of equity and have their right to the fund established, as they had not only contracted with the trustees to teach the common school, but had taught the greater part of the session.

On the return of the case, the court below will grant the relief sought, and direct the superintendent to pay this money to the appellants upon the evidence offered him, as required by the common school law, that they have complied with their contract with the trustees.

Judgment reversed and remanded for proceedings consistent with this opinion.