[No. 7685.  Decided January 16, 1909.]

SCHOOL DISTRICT No. 20, SPOKANE COUNTY, *Respondent*, v.
R. B. BRYAN, *as State Superintendent of Public
Instruction, et al., Appellants.*[1]

SCHOOLS AND SCHOOL DISTRICTS—COMMON SCHOOLS.  A common
school, within Const., art 9, § 2, means one that is common to all
children of proper age and capacity, free, and subject to, and under
the control of the qualified voters of the district.

SAME—FUNDS—APPORTIONMENT—COMMON SCHOOLS—STATE NOR-
MAL TRAINING DEPARTMENT.  Under the constitutional and statutory
provisions differentiating between the common school and the nor-
mal school, a model training department of a state normal school
wherein a portion of the school children in a district are given in-
struction which they would otherwise receive in the district schools,
is not a part of the common schools of the state, within Const., art.
9, § 2, requiring the common school fund to be applied exclusively
to the support of the common schools; as such a department is not
under the control of the districts or common to all children of proper
age or a part of our uniform system of schools, and its main pur-
pose is to benefit the normal pupil; hence Laws 1907, p. 180, § 4,
apportioning part of the common school fund of a district to the
maintenance of such a model training school is void.

Appeal from a judgment of the superior court for Thurston
county, Linn, J., entered February 13, 1908, in favor of the
plaintiff, after a trial before the court without a jury, in an
action to enjoin the apportionment of a portion of the common
school fund to a state normal school.   Affirmed.

*John D. Atkinson, Attorney General,* and *William W.
Manier, Assistant,* for appellants, contended that the model
training school contains the characteristics essential to con-
stitute it a common school, within the constitution.  *People v.
Board of Education,* 13 Barb. 400; *Roach v. Board of Di-
rectors,* 7 Mo. App. 567.  The phrase "common schools" is
synonymous with "public schools." *Jenkins v. Andover,* 103
Mass. 94.  Both have been defined by lexicographers and by

[1]Reported in 99 Pac. 28.

judicial interpretation to mean "free schools." *Merrick v. Inhabitants of Amherst*, 12 Allen 509; *Roach v. Board of Directors,* 77 Mo. 484; *Collins v. Henderson*, 74 Ky. 74; *Irvin v. Gregory*, 86 Ga. 605, 13 S. E. 120; *Roach v. Board*, 7 Mo. App. 567. They are, as a general rule, free schools supported by general taxation. 25 Am. & Eng. Ency. Law (2d ed.), 8; Law Dictionaries of Black, Anderson, Rapalje & Lawrence, Bouvier; 2 Kent, Commentaries, p. 195. The unconstitutionality of the act must be clearly shown. *Board of ·Directors of Middle Kittitas Irr. Dist. v. Peterson*, 4 Wash. 147; 29 Pac. 995; *State ex rel. School Dist. No. 24 v. Grimes*, 7 Wash. 270, 34 Pac. 836. The law will not be declared unconstitutional unless it clearly violates some express provision of the constitution. 1 Remington's Digest, page 517, and cases there cited.

*W. H. Winfree*, for respondent. No part of the revenue of the permanent school fund can be used directly or indirectly for normal schools or any similar institution. *State Female School v. Auditors*, 79 Va. 233; *Gordon v. Cornes*, 47 N. Y. 608; *State ex rel. Cutting v. Westerfield*, 24 Nev. 29, 49 Pac. 554; *People v. Board of Education*, 13 Barb. 400; *Underwood v. Wood*, 93 Ky. 177, 19 S. W. 405, 15 L. R. A. 825; *Hall's Free School v. Horne*, 80 Va. 470; *Halbert v. Sparks*, 72 Ky. 259; *Collins v. Henderson*, 74 Ky. 74. The model training school not being under the control of agents appointed by the voters and not being open to all of suitable age and attainment, is not a common school within the meaning of the constitution. 25 Am. & Eng. Ency. Law (2d ed.), page 8; *Jenkins v. Andover*, 103 Mass. 92; *Merrick v. Inhabitants of Amherst*, 12 Allen 509; *Board of Education v. Dick*, 70 Kan. 434, 78 Pac. 812; *People v. Board of Education*, *Hall's Free School v. Horne*, and *Underwood v. Wood*, *supra; Los Angeles County v. Kirk*, 148 Cal. 385, 83 Pac. 250; *Halbert v. Sparks* and *Collins v. Henderson*, *supra*. The portion of the act complained of violates the con-

stitutional provision prohibiting a special law authorizing the apportionment of any part of the school fund. *Terry v. King County*, 43 Wash. 61, 86 Pac. 210; *Louisville School Board v. Louisville*, 103 Ky. 421, 45 S. W. 1047; *Plummer v. Borsheim*, 8 N. D. 565, 80 N. W. 690. And also violates the provision for a general and uniform system of public schools. *Ellis v. Greaves*, 82 Miss. 36, 34 South. 81; *Sellers v. Cox*, 127 Ga. 246, 56 S. E. 284; *Louisville School Board v. Louisville* and *Plummer v. Borsheim, supra*.

CHADWICK, J.—In order to make effectual Bal. Code, § 2550 (P. C. § 7463), the legislature of this state, at its 1907 session, passed a law (Laws 1907, page 180, chapter 97) providing for a model training school department to be established in the State Normal Schools. Its purpose is manifest. It is to provide material for the particular training of teachers, and to this end the boards of the several normal schools are authorized, and it is made their duty, to file, on or before the first Monday in September in each year, with the board of the school district in which the normal school is situate, a requisition for the estimated number of public school pupils necessary to make up a model training school. It is thereupon made the duty of the local board to apportion a sufficient number of pupils to meet the requisition. It is also provided that the principal of the normal school may refuse to accept such pupils as, in his judgment, by reason of incorrigibility or mental defects, would tend to reduce the efficiency of the training department. It is made the duty of the school clerk to keep a segregated list of those attending the model school, and further:

"That it shall be the duty of the Superintendent of Public Instruction to apportion to the support of such normal training school out of the funds available for the support of the common schools of the district in which each normal school is situated, such proportion of the funds to which such school district shall be entitled as the number of pupils in attendance upon each such model training school, bears to the

whole number of pupils upon which the apportionment was made for the common schools in the school district in which such normal school is situated, and the funds so apportioned shall be distributed by the board of trustees for the maintenance of such model training school." Section 4.

Plaintiff brought an action in the superior court of Thurston county to restrain the defendant, as superintendent of public instruction, from apportioning to the model training department of the state normal school, located at Cheney, Washington, any of the funds available for the support of the common schools. From an order directing an injunction, and also holding:

"That so much of chapter 97, Laws 1907, 'Entitled an act relating to the model training school department of normal schools, authorized by section 7463 of Pierce's Code, section 2550 of Ballinger's Annotated Codes and Statutes of Washington, and providing for apportionment of funds therefor,' approved March 11, 1907, which seeks to apportion or appropriate any part of the common school fund or revenue therefrom or state tax for the support of the common schools is unconstitutional and void,"

the defendants have appealed.

The assignments of error, four in number, all go to the question, does the act provide for a diversion of the common school fund in contravention of the following constitutional provisions:

"The legislature shall provide for a general and uniform system of public schools. The public school system shall include common schools, and such high schools, normal schools, and technical schools as may hereafter be established. But the entire revenue derived from the common school fund, and the state tax for common schools, shall be exclusively applied to the support of the common schools." Const., art. 9, § 2.

"  .  .  .  The interest accruing on said fund, together with all rentals and other revenues derived therefrom, and from lands and other property devoted to the common school fund, shall be exclusively applied to the current use of the common schools." Const., art. 9, § 3.

Counsel for appellants have made an elaborate research of the authorities in order to arrive at a proper definition of the words "common school," and from them deduced the following: "The essential characteristics therefore of a common school are, (1) they must be maintained at public expense; (2) they must provide a course of elementary education for children of all classes of people." He concludes that the model training school comes within this definition, and is therefore a common school within the meaning of the constitution.

The word "definition" is in itself difficult to define. What would be proper under a given state of facts may be impossible under another. A word must be accepted with reference to its relation to other words and terms. The words "common school" cannot be arbitrarily defined, but must be considered in connection with the general scheme of education outlined in the constitution of the state. When so considered, they have no uncertain meaning. In adopting a constitution, the people of this state saw fit to devote a chapter to the subject of education. In it they were careful to emphasize the importance, as well as the distinct character, of the common school. They endeavored to protect and preserve the funds set apart by law for the support of the common school from invasion, so that they might be applied exclusively to the current uses of such schools. An ample provision for the education of children was made paramount, and the duty was imposed upon the legislature of providing a general and uniform system of public schools. The system provided differentiates between the common school and the normal school, as does the constitution, and when adopted such system has the force of the constitutional provision which it elaborates. The system must be uniform in that every child shall have the same advantages and be subject to the same discipline as every other child. A system of control through school boards and county superintendents is provided for, their duties defined, and a method supplied to secure, in theory at least,

efficient teachers and instructors.   When considered in this way, it would seem that the definition arrived at by counsel is too narrow.   The words "common school" must measure up to every requirement of the constitution and code of public instruction, and whenever by any subterfuge it is sought to qualify or enlarge their meaning beyond the intent and spirit of the constitution, the attempt must fail.

The propriety and benefit of the scheme are urged by counsel.   They say:

"Here we have a model training school, which is a portion of a state normal, which has as principal a person chosen for that position because of his experience as an educator, who gives personal supervision to the instruction of a certain number of the pupils who would otherwise be attending other graded schools of the district.   The principal has under his charge a corps of teachers who are making a study, a science, of the art of school teaching.   Experience will show the benefits to the pupils attending this department.   The pupils are chosen in some way, mayhap by lot, or by the directors of the district; mayhap, as being residents within a certain portion of the district in the vicinity of the normal school; mayhap, as being pupils in a certain grade or grades.   They are residents of the same district; they pursue the same studies; in all probability receive better and more careful instruction than do the others who attend the other common schools within the district.   Why is that not a common school within the meaning of the men who framed the constitution?   There are no essentials lacking."

With these considerations we can have no concern.   But if it were otherwise, the argument meets itself and furnishes abundant reason why the act in question cannot be sustained. The principal of the normal school, however accomplished, is not an officer recognized by the law creating the common school system, and is in no way answerable to those who are charged with the duty of executing it.   The teachers under his charge may be devoted in their pursuit of the art of teaching, but they are not teachers within the meaning of the law which has undertaken to insure that public school children

shall be taught only by those who have met (not those seeking to attain) a certain standard of proficiency. In other words, the argument of counsel emphasizes the fact that in its operation the act of 1907 would break the uniformity of the common school system. To summarize, a common school, within the meaning of our constitution, is one that is common to all children of proper age and capacity, free, and subject to and under the control of the qualified voters of the school district. The complete control of the schools is a most important feature, for it carries with it the right of the voters, through their chosen agents, to select qualified teachers, with powers to discharge them if they are incompetent. Under the system proposed, instead of the voters employing a teacher with proper vouchers of worthiness, they are made recruiting officers to meet a draft for material that the apprentice may be employed.

A normal school has been defined as a school,

"not intended for the education of the children of the inhabitants of the districts where they are located, but for the training of teachers for all the common schools. They are not open to all, but only to such as may be selected at times and in a manner to be prescribed by the superintendent of public instruction. . . . Applicants for admission are required to possess certain qualifications, which must be tested by preliminary examinations, and on the completion of their studies the pupils are to receive diplomas, which shall be evidence of their qualification to teach in common schools; but they are under no obligation to become teachers, and there is nothing to prevent their engaging in other pursuits." *Gordon v. Cornes*, 47 N. Y. 608.

Nor can the legislature by any contrivance, designation, or definition, make a common school a normal school, or a normal school a common school, within the meaning of the constitution.

"To say that the legislature can determine what institutions shall receive the proceeds of the school fund; and that whatever they determine to be entitled thereto, becomes *ipso facto* a common school, is begging the whole question, and

annulling the constitutional restriction." *People v. Board of Education*, 13 Barb. 400.

Admitting, for the sake of argument, that the act would result in benefit to the schools as a complete system, the benefit would be only incidental. The main purpose is to benefit the normal pupil, and would result in a diversion of the fund from the exclusive use proposed in the constitution. That the common school and the normal school are distinct is further made certain by reference to the enabling act creating this state. The people have spoken this difference in the constitution, and the legislature has maintained it in the code of public instruction. To take from the one and give to the other by indirect methods that which was designed for a special purpose would defeat the whole scheme of the law and open a way for the ultimate transposition of funds held under a most sacred trust. Courts have been zealous in protecting the money set apart for the maintenance of the free schools of the country. They have turned a deaf ear to every enticement and frowned upon every attempt, however subtle, to evade the constitution. Promised benefit and greater gain have been alike urged as reasons, but without avail. They have endeavored to say in unmistakable terms that the common school fund is just what it purports to be, a fund to be used for the sole purpose of supporting the graded schools of the commonwealth under the sanction of fixed and uniform laws. It follows that all experiments in education must be indulged, if at all, at the expense of the general fund. An attempt to divert a part of the common school fund to the education of children in certain orphanages was met by the supreme court of New York with the suggestion that, if it were accomplished, the legislature "might by a simple enactment, convert all our colleges and academies and all our seminaries into common schools. This cannot be tolerated." *People v. Board, supra.* The supreme court of Virginia, in defining the extent of legislative authority over these funds, said:

"We think the constitution has dedicated this fund to the public free schools of the state, and intrenched behind its bulwarks, it is beyond the reach of the legislature for any other purposes whatever." *State Female Normal School v. The Auditors*, 79 Va. 233.

The supreme court of Kentucky, in several cases, has refused to countenance any diversion of the moneys set apart for the common schools, meeting a positive showing of economy to the public school system with the following:

"The position that the school building is not sufficient in dimensions to accommodate all the children, and for that reason the legislature had the power to divide the fund, cannot be sustained. If not sufficient, those in charge of the common school should make it so, and to allow the legislative department of the government to divide the fund in such a mode, when, in the opinion of those interested, the school buildings were insufficient, would be subversive of the whole school system. If a case could exist where such legislative action would be sanctioned, it is found in the case before us; but, when ample remedies are afforded by the law regulating common schools to prevent such results as is now attempted to justify this character of legislation, there is no reason for establishing a precedent that must, if followed, destroy the very existence of common schools." *Underwood v. Wood*, 93 Ky. 177, 19 S. W. 405, 15 L. R. A. 825.

And the same court, in expressing its unwillingness to conjure an excuse for such legislation, said:

"If the General Assembly may appropriate the revenues of the school fund for any purpose which cannot be clearly shown not to be in aid of common schools in any sense or in any degree, the whole fund may be dissipated and lost to the children of the state whenever the legislature so wills it." *Collins v. Henderson*, 74 Ky. 74.

Other cases having a direct bearing on the issue are *Hall's Free School Trustees v. Horne*, 80 Va. 470; *Halbert v. Sparks*, 72 Ky. 259.

It is not that the legislature cannot make provision for the support of a model training school, but in its attempt to do so, it has made provision for it out of the wrong fund. This

conclusion makes it unnecessary to discuss the other questions raised by counsel for respondent as to the sufficiency of the title of the act.

The judgment of the lower court is affirmed.

RUDKIN, C. J., FULLERTON, CROW, and MOUNT, JJ., concur.