MADSEN, J. (dissenting)
¶ 67 I agree with Justice Wiggins's dissent that the 2016 charter school act (Act), Laws of 2016, ch. 241, violates article III, section 22 of our state constitution by usurping the constitutional duties of the superintendent of public instruction, and that the offending provisions are not severable, thereby rendering the entire Act unconstitutional. I write separately because, in my view, the Act additionally violates the uniformity requirement contained in article IX, section 2 of our state constitution, as discussed below.
¶ 68 The lead opinion holds that "charter schools are not rendered unconstitutional just because they do not operate identically to common schools." Lead opinion at 1151. While I do not disagree with the underlying general principle that all schools need not be identical, in my view, the sweeping exceptions the Act provides for charter schools, coupled with the absence of any direct accountability to the local community that charter schools purport to serve, result in a failing of uniformity that violates article IX, section 2 of our state constitution. Accordingly, I dissent.
¶ 69 The relevant constitutional provision states, "The legislature shall provide for a general and uniform system of public schools. The public school system shall include common schools, and such high schools, normal schools, and technical schools as may hereafter be established." WASH . CONST . art. IX, § 2 ; see also Sch. Dist. No. 20 v . Bryan, 51 Wash. 498, 501, 99 P. 28 (1909) (quoting same). In Bryan, this court explained that our state constitution "imposed upon the legislature [the duty] of providing a general and uniform system of public schools." Bryan, 51 Wash. at 502, 99 P. 28. Relevant to the context in Bryan, this court explained:
The system must be uniform in that every child shall have the same advantages and be subject to the same discipline as every other child. A system of control through school boards and county superintendents is provided for, their duties defined, and a method supplied to secure, in theory at least, efficient teachers and instructors.
Id. at 502-03, 99 P. 28.
¶ 70 In Bryan, the challenged legislation authorized students to be taught at model schools set up in normal (i.e., teachers') schools as an aid for trainee teachers. Bryan held in part that the legislation at issue was invalid because "its operation ... would break the uniformity of the common school system," that is, by having students instructed by uncertified teachers. Id. at 504, 99 P. 28. Although this court's decision in Bryan ultimately turned on the improper diversion of common school funds, its discussion of required uniformity concerning the public school system remains relevant.
¶ 71 Here, the "uniform system of public schools" that article IX, section 2 requires is thwarted by the method of governance provided for charter schools by the Act. Under the Act, charter schools are run by an appointed board or nonprofit organization.[1] See RCW 28A.710.010(1), (5), (6), .030(1)(c). Thus, they are not subject to local voter control and lack any direct accountability to the communities they purport to serve. In Bryan, this court acknowledged the importance of local voter control regarding common schools stating:
[A] common school, within the meaning of our constitution, is one that is common to all children of proper age and capacity, free, and subject to and under the control of the qualified voters of the school district. The complete control of the schools is a most important feature, for it carries with it the right of the voters, through their chosen agents, to select qualified *1160 teachers, with powers to discharge them if they are incompetent.
51 Wash. at 504, 99 P. 28.
¶ 72 Here, charter schools are "[o]pen to all children free of charge" and are required to provide equivalent educational opportunities and advancement as compared to common schools, while utilizing public funds. See RCW 28A.710.020(l)(a), .020(2), .040(2)(b); see also RCW 28A.710.050(1) (charter schools are "open to any student regardless of his or her location of residence"), .280(1) (state funding for charter schools is to be distributed "equitably"), .020(l)(b) (charter schools are "an alternative to traditional common schools"). But, because charter schools are not subject to local voter control, as are common schools, the different (nonuniform) governance of charter schools runs afoul of the constitutional requirement of a "uniform public school system." Again, while I do not disagree with the lead opinion's general notion that legislatively created non-common-schools need not operate identically to common schools in every respect,[2] nevertheless, the private governance and commensurate lack of accountability to local voters regarding charter schools that are open to all students, marks a fundamental and, in my view, dispositive difference between charter schools and common schools sufficient to render the new charter schools outside the uniformity requirement of article IX, section 2.
¶ 73 I acknowledge that in Bryan this court was addressing the characteristics for common schools and that we have recently made clear that charter schools are not common schools. See League of Women Voters of Wash. v . State, 184 Wash.2d 393, 412, 355 P.3d 1131 (2015). Nevertheless, the Act creates a parallel public school system (i.e., up to 40 schools that are open to all students, RCW 28A.710.150(1) ), teaching a general curriculum, using public funds, and lacking direct local voter control. That last attribute renders charter schools at odds with an established core characteristic of our general education public school system-local accountability-and results in nonuniformity. This is so because charter schools, which purport to be open to all students and to provide a general education, are exempt from many of the requirements of our state public school system. The Act provides that charter schools are subject to express charter contract terms and state and federal laws concerning health, safety, parents' rights, civil rights, and nondiscrimination; but the Act otherwise provides sweeping exemptions to charter schools, stating,
For the purpose of allowing flexibility to innovate in areas such as scheduling, personnel, funding, and educational programs to improve student outcomes and academic achievement, charter schools are not subject to, and are exempt from, all other state statutes and rules applicable to school districts and school district boards of directors. Except as provided otherwise by this chapter or a charter contract, charter schools are exempt from all school district policies.
RCW 28A.710.040(3). These exemptions authorize wide variations of personnel management, curriculum, discipline, and academic accountability, both among charter schools and between charter schools and other portions of our general education public school system. This court has repeatedly indicated that under article IX, section 2 's uniformity requirement, "every child shall have the same advantages and be subject to the same discipline as every other child." Bryan, 51 Wash. at 502, 99 P. 28 ; Fed. Way Sch. Dist. No. 210 v . State, 167 Wash.2d 514, 524, 219 P.3d 941 (2009). The noted exemptions violate that principle, rendering the Act nonuniform.
¶ 74 Further, in light of such sweeping exemptions, local voter control would be essential to ensure that charter schools are held accountable to the people the schools purport to serve. But there is no local control under the Act. Thus, the accountability this court found essential in Bryan is absent. See Bryan, 51 Wash. at 504, 99 P. 28 (recognizing the importance of voter control of the schools through their chosen agents).
*1161 ¶ 75 The lead opinion relies on Federal Way School District, in which this court reiterated,
"A general and uniform system, we think, is, at the present time, one in which every child in the state has free access to certain minimum and reasonably standardized educational and instructional facilities and opportunities to at least the 12th grade-a system administered with that degree of uniformity which enables a child to transfer from one district to another within the same grade without substantial loss of credit or standing and with access by each student of whatever grade to acquire those skills and training that are reasonably understood to be fundamental and basic to a sound education."
167 Wash.2d at 524, 219 P.3d 941 (quoting Northshore Sch. Dist. No. 417 v . Kinnear, 84 Wash.2d 685, 729, 530 P.2d 178 (1974), overruled on other grounds by Seattle Sch. Dist. No. 1, 90 Wash.2d 476, 514, 585 P.2d 71 (1978) ).[3] But, in my view, the Act's sweeping exemptions can only frustrate a student's access to standardized educational opportunities and his or her ability to freely transfer to other schools without negative impact.
¶ 76 Further, in the present context, I would add local voter control to the above quoted list of general education public school system uniformity attributes. This court made clear in Bryan that local voter control of the school, to ensure accountability to those served by the school, was a hallmark of common schools. In my view, to maintain uniformity within the public school system, a charter school, which is open to all children and offers a general education, must likewise be subject to local voter control. As noted, this court stated in Bryan , "Uniform" means that "every child shall have the same advantages and be subject to the same discipline as every other child " Bryan, 51 Wash. at 502, 99 P. 28 (emphasis added). In my view, accountability to those served by a general education school via local voter control is a historically established attribute (i.e., an "advantage" to which all general education students are entitled) that falls within article IX, section 2 's uniformity requirement.
¶ 77 I acknowledge that some other legislatively created schools and educational programs are also not subject to local voter control. The parties point to several, such as tribal compact schools.[4] But these programs are distinguishable in that they either serve discrete populations or provide special instruction.[5] See, e.g., *1162 Tunstall v. Bergeson, 141 Wash.2d 201, 222-23, 5 P.3d 691 (2000) (holding that chapter 28A.193 RCW makes ample provision for educational programs designed to address "the special educational and rehabilitative needs of children incarcerated in adult prisons"). Further, I agree with the lead opinion that the constitutionality of these special programs and schools is not before the court in this case. See lead opinion at 1148 n.6. By contrast, charter schools under the Act are required to be open to all children and to provide equivalent education to common schools. This distinguishes them from special and limited educational programs. And, as discussed, in this circumstance the requirements of uniformity, in my view, include accountability through local voter control.[6]
¶ 78 In sum, the Act creates a parallel public school system that provides a general education, serves all students, and uses public funds, but lacks local voter control or oversight. In my view, it therefore violates the uniformity requirement of article IX, section 2.
¶ 79 For the reasons discussed, I dissent.
Owens, J.

Such managing entity (i.e., the appointed charter school board or the nonprofit organization hired by the board to manage the charter school) is responsible for functions that would normally be handled by an elected school board, including hiring, managing, and discharging employees; receiving and disbursing funds; and entering into contracts, among other typical management tasks. See RCW 28A.710.030(1).

In stating that "the dissent would hold that all public schools must be identical to common schools in order to satisfy uniformity," lead opinion at 1150, the lead opinion clearly misreads the dissent.

In Federal Way School District, we again addressed a funding issue. The Northshore School District decision, from which the Federal Way School District decision quoted, also addressed a challenge to the state school system's funding. In Federal Way School District, we ultimately rejected the school district's contention that the school funding system, as it concerned staff salaries, violated the uniformity requirement of article IX, section 2. In considering the historical context of article IX, section 2 's uniformity provision this court stated in relevant part, "At the time of the constitution and since, ... local control has been assured through locally elected school board administrators." 167 Wash.2d at 523, 219 P.3d 941.

See RCW 28A.715.020(2) (tribal compact schools are "exempt from all state statutes and rules applicable to school districts and school district boards of directors"); see also RCW ' 28A.600.310 ("Running start program" authorizing qualified 11th and 12th grade high school students to take classes offered at higher education institutions), .350 (for both high school and postsecondary credit), .385 (and such program may include participation by nearby Oregon and Idaho community colleges); RCW 28A. 185.040 (concerning the University of Washington's early entrance program and transition school for the education of highly capable students below 18 years of age; providing that the transition school is limited to 30 enrollees per year); RCW 28A.193.020 (authorizing superintendent of public instruction to solicit an education provider for the Department of Corrections' (DOC) juvenile inmates); Clerk's Papers at 873 (noting the DOC's operation of a "Youth Offender Program" under contract with Centralia College for the education of juvenile inmates).

See, e.g., RCW 28A.715,030(3) (state-tribal education compact schools "may prioritize the enrollment of tribal members" if the school's capacity is insufficient to enroll all students who apply); see also RCW 28A.715,800 (authorizing a pilot project for participating tribal compact schools that provides flexibility to accommodate cultural, fisheries, and agricultural events and practices, and permits replacing statewide student assessments with locally developed, culturally relevant assessments), .810 (exempting student participants in such pilot project from general requirements, such as the obligation to earn a certificate of academic achievement as a prerequisite for graduation from public high school).

I acknowledge the State's contention that the Spokane School District has authorized two charter schools and that under the Act those schools are "subject to district oversight." Br. of Resp't at 33. However, the Act expressly limits that oversight. RCW 28A.710.180(2) provides, in relevant part, that an authorizer's oversight of a charter school may not "unduly inhibit the autonomy granted to charter schools." In my view, such limited oversight by authorizers is an inadequate substitute for the right of school district voters to exercise "complete control of the schools ... through their chosen agents," which this court recognized in Bryan, 51 Wash. at 504, 99 P. 28.