JUDGE COFER
delivered the opinion of the court.
The sole question presented by this record is whether an act entitled “ An act for the benefit of common schools in Marshall, Livingston, and McCracken counties,” approved February 23, 1874, Acts 1873-4, page 483, is constitutional or not. The act is in these words :
“§ 1. Be it enaeted by the General Assembly of the Commonwealth of Kentucky, That the common-school commissioners of Marshall, Livingston, and McCracken counties shall each be, and he is hereby, authorized and empowered to draw from the State Treasury the amount and bonded surplus of school-fund in the state treasury to the credit of his county, upon being directed so to do by order of his county court; but *149 before such order shall be made by court, the commissioner shall execute covenant to the Commonwealth, with surety worth at least double the amount to be drawn, that he will safely keep, invest, or pay out or otherwise dispose of said fund for common-school purposes in his county as the court of claims for his county may order; which covenant shall be executed in and approved by the county court, and filed in the clerk’s office of said court; and for any breach of the bond the county court, or any person or persons aggrieved, may maintain an action thereon.
“ § 2. Upon the written order of the commissioner, accompanied by a copy of the order of his county court directing him to draw said fund, it shall be the duty of the Auditor to draw his warrant upon the Treasurer for the full amount of such surplus due or belonging to the county of the commissioner so ordering the same.
“ § 3. This act shall take effect from its passage.”
“ The bonded surplus of the school-fund in the state treasury to the credit of Marshall, Livingston, and McCracken counties,” to which reference is made in the above act, arose in this wise: Ever since the adoption of the present constitution the law has made it the duty of the superintendent of public instruction to apportion each year the interest and dividends upon the school-fund and the proceeds of taxes levied for educational purposes, among the whole number of children in the state within the school-ages, as fixed by law, and to place to the credit of each county a sum bearing the same proportion to the whole fund, to be distributed, that the number of school-children in such county bears to the whole number of such children in the state. This was done in obedience to the proviso to section 1 of article 11 of the constitution, which provides, among other things, “ that each county shall be entitled to its proportion of the income” of the school-fund.
*150 The amount belonging to each county having been thus ascertained, it came under the provisions of another clause of the same proviso, which requires “ that if any part of the fund, to which any county is entitled, is not called for, for common-school purposes, it shall be reinvested from time to time for the benefit of such county.”
The effect of these two provisions is to require the distribution among the counties, to be made according to the number of school-children in each, but the counties are only entitled to draw out of the treasury that portion of the fund apportioned to them which is due to districts in which schools have been kept according to law, and that portion due sueh districts as have not caused schools to be taught can not be called for, and is required to be reinvested for the benefit of the county. In nearly all the counties a greater or less number of districts failed each year to have schools taught, and the money due to sueh district being on that account uncalled for, remained to the credit of the counties respectively, and in obedience to the direction of the constitution to reinvest the money not called for, for the benefit of the county entitled to it, the legislature made it the duty of the board of educacation to transfer the amount to the sinking fund, and required the governor to execute the bond of the state, bearing interest at six per cent, for the aggregate amount thus transferred, payable to the board of education, and specifying the amount belonging to each county.
The annual interest on the bonded surplus of each county has been paid, and each year added to the share apportioned to such county and distributed with it, but the amount reinvested as belonging to the several counties has been always treated as principal, and has never been encroached upon except to pay for schools which had been taught according to law, but from some cause were not properly reported before the surplus was reinvested, and then only to the extent to *151 which, but for the failure of some of the common-school officers properly to report, would have been called for before the reinvestment was made.
The fund thus created and invested as belonging to Marshall, Livingston, and McCracken counties is the fund now sought to be withdrawn.
It arose out of the income from the common-school fund, and from taxes levied for educational purposes, and the power of the legislature over it is limited in the same way and to the same extent, at least, to which its power over the income from the principal of the school-fund and the proceeds of taxes levied for school purposes is limited, and it may be that it has by reinvestment became an inviolate fund, only the interest or income from which can be authorized to be withdrawn and used, but whether it has become capital and passed beyond the control of the legislature except for reinvestment and preservation for the benefit of the counties respectively, it is not necessary now. to decide.
The constitution provides that the original school - fund, together with any sum which has been or may be raised “ by taxation or otherwise, for purposes of education, shall be held inviolate, for the purpose of sustaining a system of common schools. The interest and dividends of said funds, together with any sum which may be produced for that purpose by taxation or otherwise, may be appropriated in aid of common schools, but for no other purpose.” (Sec. 1, art. 11, Con.)
In Halbert v. Sparks, 9 Bush, 259, this court said: “ The General Assembly has the undoubted power to pass laws regulating the manner in which the common-school fund shall be devoted to the purposes for which it has been set apart, but these laws, as far as practicable, should be general in their application. Special legislation which does not come in aid of the general system, or to relieve against hardships growing out of its provisions, or the neglect or default of the officers *152 by whom it is administered, and especially such as interferes with' those officers in the discharge of their duties, or takes from them the right to control the funds set apart to the counties and districts for which they are acting, is calculated to destroy the system of common schools which the constitution declares shall be maintained.”
The act in question is a special act, and does not come in aid of the general system, or to relieve against its hardships, or the neglect or default of the officers by whom it is administered. So far from being in aid of the general system it is subversive of it. It does not require the county courts to apply the fund in aid of common schools, or to invest it for the benefit of such schools. No direction whatever is given as to the time or manner of disposing of the fund. The school commissioners are required to execute covenants that they will “safely keep, invest, or pay out, or otherwise dispose of said fund for common-school purposes in his county as the court of claims for his county may order.”
What is to be done with the fund until ordered by the county court to be invested or paid out, or otherwise disposed of for common-school purposes, the act does not provide, but the constitution requires it to be invested.
How the fund is to be used when the court of claims shall direct it to be paid out for school purposes, the act fails to provide, while the constitution provides that it shall only be used in aid of common schools, which means, as decided in Halbert v. Sparks, a general system of common schools.
That the system of common schools provided for by the constitution was intended to be general, governed and aided in all parts of the state in the same way and to the same extent, does not admit of doubt. Not only was the system intended to be general and uniform/ but it was intended to be controlled by the legislature.
The act in question, even if it could be construed to require *153 the county courts to apply the fund directed to be paid to their school commissioners in aid of common schools in their-respective counties, does not require that it should be distributed ratably among the several districts, and there is nothing in the act to prevent the whole from being turned over to a single district.
But it can not be construed to make it the duty of the courts ever to order the- fund to be used for school purposes, or to prevent them from ordering it to be invested in bank or railroad-stock, or from requiring it to be loaned to the county court tb be used for ordinary purposes.
The General Assembly fías no power thus to abdicate its control over the fund and abandon to the county courts, to be performed or not at their pleasure, the duty and power which the constitution has imposed upon, and vested alone in the legislature.
If this act be constitutional, the aggregate sum of $301,-123.08 for which the board of education now holds the bond of the state for surplus not called for, for school purposes, will pass, under section 9, article 1, chapter 18 of the General Statutes, which contains similar provisions, into the hands of the several county courts in the state, and instead of having' one general system of common schools, governed by general laws and under the control of the officers of the common schools, there may be as many systems as there are counties; or the fund devoted by the constitution to the support of common schools may be applied or not, as may suit the will or the convenience of the several county coux-ts.
Another feature of the act, which is worthy of notice, is that it assumes, contrary to the fact, that the bonded surplus is in the treasury when it is in the sinking-fund, and as' the commissioners of that fund are not required to pay it, it must be paid, if at all, out of the revenue proper, which the act shows was not intended.
*154 Nor the reasons indicated we are of tbe opinion that the auditor properly refused to issue his warrant, and that the court erred in overruling his demurrer to the appellees’ petition. The judgment is therefore reversed, and the cause is remanded with directions to sustain the demurrer and dismiss the petition.