CASE 76—PETITION EQUITY—APRIL 10.

# Graded School District No. 2 v. Trustees of Bracken Academy.

APPEAL FROM BRACKEN CIRCUIT COURT.

1. DONATION OF LANDS TO COUNTIES TO ESTABLISH SEMINARIES OF LEARNING—VESTED RIGHT.—Where, under the act of 1798, donating lands to the different counties of the State for the purpose of establishing seminaries of learning, the trustees in whom was vested the title and control of the lands donated to a particular county have, under legislative authority, sold the lands and with the proceeds erected buildings and established a school in accordance with the provisions of the act, the Legislature has no power to take from these trustees or their successors the title to the property and vest it in the trustees of the common school district. And this is true, although the original act making the donation provided that it should "be subject to any future order of the Legislature," it being also provided that "the donation herein made shall forever continue appropriated to the use of seminaries." And even if the Legislature had the power to apply the property to common school uses, it would have no right to give it to

Vol. 95.]        JANUARY TERM, 1894.        437

Graded School District No. 2 v. Trustees of Bracken Academy.

one of the school districts of the county to the exclusion of the other districts.

2. SAME—POWER OF COURT TO REMOVE TRUSTEES.—While the grant is irrevocable, the power exists on the part of the judiciary, when called upon, to see that the trustees of this fund, or of the buildings and grounds, use them as a seminary for educational purposes, and to remove them and appoint others upon their failure in good faith to carry out the purposes of the donation.

WM. H. HOLT, J. B. CLARKE AND GEORGE DONIPHAN FOR APPELLANTS.

1. The Legislature had the power to pass the act of February 27, 1890, by which the so-called Bracken Academy and its trustees were abolished and the control of the property turned over to the appellants, the Trustees of Common School District No. 2. The act creating and endowing the academy reserved the power to change or abolish it; and, besides, it was a public and not a private corporation, and no private right entered into it. (2 Littell's Laws, 242; Acts 1889–90, vol. 1, p. 22; City of Louisville v. President, &c., University, 15 B. M., 692–740; Angell & Ames on Corporations, p. 9; 5 Stew. & Port. (Ala.), 17.)

2. Conceding, for the sake of argument, the property was a part of the common school fund of the State (which it was not), yet, as the act placed the trustees of a common school district in charge of it for common school purposes, the act was in aid of the general system of common schools, and therefore within the power of the Legislature. (Higgins v. Prater, 91 Ky., 6; Halbert v. Sparks, 9 Bush, 260.)

W. H. WADSWORTH FOR APPELLEES.

The act of February 27, 1890, is unconstitutional, because—

1. The subject of the act is not expressed in the title. (Session Acts 1889–90, vol. 3, p. 1466; Rushing v. Sebree and wife, 12 Bush, 200; Pennington v. Woolfolk, &c., 79 Ky., 13; Wulftange v. McCollom, &c., 83 Ky., 361.)

2. The act is in conflict with section 1, article 11 of the Constitution of 1850, which provides that the common school fund shall be held inviolate for the purpose of sustaining a system of common schools. (Auditor v. Holland, 14 Bush, 152; Halbert v. Sparks, 9 Bush, 263; Higgins v. Prater, 91 Ky., 6.)

3. The State has no power to revoke a grant, even of its own funds, when given to a corporation for special uses. And the State may aid a public corporation by *irrevocable* gift, as well as a private corporation. But even if the Legislature has the power to revoke a gift to a public corporation, the mere fact that the funds of a corporation were derived from the State does not determine that the corporation is public. (Trustees Dartmouth College, &c., v. Woodward, 4 Wheat., 490; City

438                KENTUCKY REPORTS.          [Vol. 95.

Graded School Dstirict No. 2 v. Trustees of Bracken Academy.

of Louisville v. President, &c., University, 15 B. M., 671; Trustees
of Vincennes University v. State of Indiana, 14 How., 271; Terrett
v. Taylor, 9 Cranch, 43.)

4. The act discriminates against the colored children of the district.
    (Dawson v. Lee, &c., 83 Ky., 56.)

COCHRAN & SON on same side. ·

1. The act of February 27, 1890, is in violation of section 10, article 1 of
    the Constitution of the United States, which forbids the States pass-
    ing any law impairing the obligation of contracts.  The charters of
    corporations are contracts, within the prohibition of this section,
    unless they are charters of corporations created for governmental
    purposes and granted as part of the machinery of government.  (Hare
    on Constitutional Law, vol. 1, p. 598; Dartmouth College Case, 4
    Wheaton, 490; Trustees of Vincennes University v. State of Indiana,
    14 How., 271.)

2. The act in question is in violation of article 11 of the Kentucky Con-
    stitution of 1850, forbidding a diversion of the common school fund.
    (Halbert v. Sparks, 9 Bush, 259; Collins v. Henderson, &c., 11 Bush,
    74; The Auditor v. Holland, 14 Bush, 147; Higgins v. Prater, 91
    Ky., 6.)

3. The act is in violation of the fourteenth amendment to the Constitution
    of the United States, because it ignores the black citizens of the
    district, and gives them no right to share in the benefits of the fund.
    (Claybrook v. City of Owensboro, 16 Fed. Rep., 297; Strander v.
    West Virginia, 100 U. S., 303; Ward v. Flood, 48 Cal., 51; Dawson
    v. Lee, 83 Ky., 49.)

J. R. MINOR of counsel on same side.

JUDGE PRYOR delivered the opinion of the court.

In the year 1798 the Legislature of this State, with a
view of affording greater facilities for education and to
establish seminaries of learning in each county through-
out the entire Commonwealth, donated to each county
six thousand acres of its vacant and unappropriated
lands, located south of Green River, for that purpose.

The original act of December 19, 1798, specified many
of the counties to which the donation was made, and
designated the trustees in whom was vested the title and
control of the fund or subject donated, subject to legisla-

tive control; and by the third section of the act the several counties not named, or in which seminaries had not been established, were entitled to the benefit of the law by establishing schools, the trustees to be subject to such regulations and rules as applied to the trustees who had been appointed by the Legislature.

Bracken was one of the counties to which the donation was expressly made, and Philip Buckner, Nathaniel Patterson, Samuel Brooks and others were constituted ·a body-politic and incorporate, and styled by the name of the trustees of the Bracken Academy. This was under the act of 1798, and these trustees and their successors have continued to hold the possession and title as a corporate body of the thing donated, or its proceeds, as well as the control of the seminary property, until the 5th of September, 1888, when, as trustees, they leased the seminary to P. B. Powell and others; who were the trustees of Graded Free School District No. 2, in the town of Augusta, for one year, and by an indorsement on the written lease the time was extended one year longer and ended the 1st of September, 1890. After the lease had expired the trustees of the Bracken Academy, the original lessors, demanded possession of their seminary and its grounds, and the appellants refused to deliver possession, denying the title of their landlord and claiming that the Legislature of Kentucky, by an act passed on the 24th day of May, 1890, had deprived them of their corporate existence and vested the right and title to the academy and its grounds in the trustees of Common School District No. 2, in Bracken County.

The appellees, trustees of Bracken Academy, sued out this writ of forcible detainer against their lessees, and

during the progress of the case the trustees of the Common School District No. 2 were made parties-defendants on their motion, and were, in fact, in the possession when the writ issued, claiming the property by reason of the act of May 24, 1890.

It is desired by all the parties to this appeal that the case should be decided on its merits, and we will not therefore take notice of the refusal of the lessees to regard the title of their lessors, or the surrender of the possession by them to the trustees of Common School District No. 2, with the knowledge on the part of the latter as to the manner in which the lessees of appellees entered. The question then arises, did the act of May 24, 1890, deprive these appellees, who were the legitimate successors of the original trustees of Bracken Academy, of their right and title to the seminary and its grounds.

By the provisions of the second section of the act of 1798 there was donated to the original trustees and their successors six thousand acres of these vacant lands for the benefit of the academy, and it was then stipulated that the land should not be leased by these trustees for a longer period than twenty years; and further stipulated that the lands should revert to the State if the trustees did not, within ten years, establish a school with at least twelve scholars.

It was also provided "*that the several grants and appropriations of land shall be subject to any future order of the Legislature;* but no act shall be passed to impair any contract which may be made by the trustees of any of the seminaries established by this act by virtue of the powers herein delegated to them. And provided always, that the donation herein made shall forever continue

appropriated to the use of seminaries." (2 Littell's Laws of Ky., 240–246.)

Under this section, providing that the " several grants and appropriations of lands shall be subject to any future order of the Legislature," it is claimed the Legislature derived its power to take this land from Bracken Academy or its trustees, and vest the title in the trustees of Common School District No. 2.

In the month of December, 1804, the Legislature, exercising its power and control over these lands, authorized the trustees to sell one-half of the land to erect buildings, etc.; and in the year 1815 empowered the trustees to sell all the land donated to them, and in December, 1822, Augusta College having been incorporated, the trustees of Bracken Academy appropriated $10,000 of the funds in their hands to this seminary, with the approval of the Legislature (Session Acts 1822, page 163), and in 1834 the trustees of Bracken Academy were authorized to transfer to the trustees of Augusta College $10,000 in their hands, to be managed by the trustees of that college, and in case the college was not kept up, the money to be refunded to the trustees of Bracken Academy. It is said, and a fact not disputed, that the college no longer exists, except as the Bracken Academy, the trustees of the academy having full possession of the grounds and buildings at the time the lease to the graded school was made. This exercise of power by the Legislature is alluded to for the purpose of construing that portion of the act in which the Legislature reserved the right *to make orders as to the grants* of the lands donated.

There was only one condition upon which the land was to revert to the State, and that was upon the failure of

the trustees to have a school with as many as .twelve scholars within the time fixed by the grant; and it is expressly provided that *these donations should forever continue appropriated to the use of seminaries*, and the land having been sold and the money appropriated as directed, the grant is irrevocable, with the power existing on the part of the judiciary when called upon to see that the trustees of this fund, or of these grounds and the college, use it as a seminary for educational purposes, and to remove them by appointing others, upon their failure in good faith to carry out the purposes of the donation.

It is not contended that the State has the power to make an endowment or donation to a particular county or college for educational purposes, and then, by subsequent legislation, recall it. Here was a plain and certain donation, to these trustees and their successors forever, of this six thousand acres of land to Bracken Academy, and the proceeds (the land having been sold) were appropriated as directed by the Legislature, and so long as the seminary exists the fund belongs to these trustees, and the Legislature has no power to devote the building to common school purposes, or to vest in any common school district the title to this property.

Here was a contract with these trustees for a special purpose, and that was to enable them to have a seminary of learning in the County of Bracken. It was in fact designed to benefit the county, a like appropriation having been made to other counties, and to hold that the Legislature had the power to make this building and its grounds a part of the common school fund would be a perversion of the purpose of the original donation, and what is still more objectionable, would be giving this

school fund or the buildings to one of the common school districts, when all would be entitled to the benefit of the law, if otherwise constitutional.

These trustees and their successors, having been holding this fund as donors, for the purpose contemplated, for nearly a century, were authorized to add to the original gift by obtaining private subscriptions and otherwise, and after a control for so long a period are told that the Legislature has divested them of title by transferring the right, use and title of the college and grounds to a school district. The act is clearly unconstitutional, and if the trustees are recreant to their duty, their conduct may be made the subject of judicial investigation. (Trustees of Dartmouth College v. Woodward, 4 Wheaton, 518; City of Louisville v. President, &c., University, 15 B. M., 671; Anderson v. Holland, &c., 14 Bush, 147; Trustees of Vincennes University v. State of Indiana, 14 Howard, 271.)

Judgment affirmed.