### JONES et al. v. ALLEN et al.[1]

(Circuit Court of Appeals, Eighth Circuit. February 21, 1898.)

No. 954.

1. EVIDENCE—PROOF OF ADMITTED FACTS.

Although relevant facts alleged in a complaint are not denied in the answer, the fact that the plaintiff, for greater certainty, introduces in evidence records tending to establish those allegations, does not prejudice the defendant, nor does the admission of them in evidence constitute error.

2. SUIT ON INJUNCTION BOND—SPEEDING CAUSE.

In an action against the sureties on an injunction bond, given, in a suit to restrain the prosecution of an action at law, to indemnify the plaintiff in the latter action if it transpired that the injunction was wrongfully sued out, it appeared that the equity suit had occupied some seven years before a decree was entered vacating the injunction, but there was no evidence that the complainants in the equity suit, or their sureties, had themselves made any effort to speed the cause. *Held*, that it was to be presumed that the delay arose because all parties were willing that the hearing should be postponed.

3. PLEADING AND EVIDENCE—IMMATERIAL VARIANCE.

In the complaint in the action on the bond it was alleged that the principals therein became insolvent before the injunction was dissolved, while defendants claimed that it was subsequent thereto that they became insolvent or that their insolvency became known. *Held*, that the question whether the damages sued for were the result of a failure occurring before the dissolution of the injunction, or so shortly thereafter that the plaintiffs could not make their debt, was immaterial, and that there was no material variance between the pleadings and the proof.

4. EVIDENCE—TESTIMONY AS TO STATEMENTS BY JUDGE.

At the trial, evidence was admitted on behalf of the plaintiffs of a conversation held, after the decree in the equity suit had been entered, between the trial judge and the counsel for the respective parties, in which the judge stated that he would not allow the action at law, which had been stayed, to be tried during the pendency of an appeal in the equity suit. *Held* that, in view of the defense that the plaintiffs in the action on the bond had failed to prosecute the original action at law with due diligence after the injunction was vacated, this evidence was competent as showing the cause for their delay.

5. DAMAGES—PROXIMATE RESULTS.

*Held*, further, that even if it were true, as contended by the defendants, that the defendants in the original action were solvent when the restraining order was dissolved, the jury were at liberty to find, on the evidence,

[1] Rehearing pending.

that plaintiffs sustained the damage complained of as the direct result of the injunction.

6. ACTION ON BOND—EXTENT OF LIABILITY.

The bond in suit was given to secure the payment of damages, "not exceding $7,000," which might be sustained by reason of the injunction. After the injunction was dissolved, judgment was secured against the defendants in the action at law for $11,847.79, upon which the sum of $4,975 was collected on execution therein, which sum the sureties on the bond, in the subsequent action against them, moved to have credited upon the judgment against them for the full amount of the bond. This motion was denied. *Held* no error, as the damages represented the loss sustained by the plaintiff in excess of the sum already collected on execution.

7. DAMAGES SUBSEQUENT TO SUIT.

A plaintiff is entitled to recover compensation for such damages as he can establish on the day of the trial, providing they were the proximate result of the alleged wrongful or tortious act.

Philips, District Judge, dissenting.

In Error to the Circuit Court of the United States for the Eastern District of Arkansas.

This action is founded upon an injunction bond dated December 17, 1888, in which Wiley Jones and C. H. Triplett, two of the plaintiffs in error, and J. B. Talbot, since deceased, became sureties for R. G. Atkinson and E. B. Houston, to secure the payment of any damages, not exceeding $7,000, which might be sustained by reason of the injunction, if it was finally decided that it ought not to have been granted. R. G. Atkinson and E. B. Houston, the principals in the bond, had been sued by James H. Allen, Thomas H. West, and J. C. Busch, the present defendants in error, in an action at law in the district court of the United States at Helena, Ark., to recover the sum of $7,000. To restrain the further prosecution of that suit, Atkinson and Houston filed a bill in equity in the circuit court of the United States for the Western division of the Eastern district of Arkansas, and obtained an interlocutory injunction, on December 8, 1887, giving the bond in suit to indemnify the plaintiffs in the action at law against any damages which they might sustain by reason of the injunction, if it transpired that it was wrongfully sued out. The equity suit resulted, on October 5, 1894, in a decree dismissing the bill of complaint and dissolving the injunction, which decree was affirmed by this court on December 2, 1895. 36 U. S. App. 255, 17 C. C. A. 570, and 71 Fed. 58. During the pendency of the suit in equity the action at law remained in abeyance. It was tried, however, on May 9, 1896, subsequent to the affirmance of the decree in the equity case, resulting in a judgment against Atkinson and Houston, the principals in the injunction bond, for the sum of $11,847.79. When the injunction was obtained the principals in the bond were solvent. They subsequently became so far insolvent that the full amount of the aforesaid judgment could not be made by execution. This action on the injunction bond was commenced on June 18, 1896, and resulted, on December 5, 1896, in a judgment against the above-named sureties, and against J. B. Talbot, as administrator of J. H. Talbot, the deceased surety, in the sum of $7,000. The case comes to this court on a writ of error which was sued out by the sureties.

J. M. Taylor (J. G. Taylor, N. T. White, W. P. Grace, and A. B. Grace, on brief), for plaintiffs in error.

George B. Rose (U. M. Rose, on brief), for defendants in error.

Before SANBORN and THAYER, Circuit Judges, and PHILIPS, District Judge.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

It is contended, in the first place, that the trial court erred in permitting the plaintiffs below, who are the defendants in error here, to

introduce the following record testimony: First, the mandate of this court in the equity case in which the injunction bond had been given; second, the judgment rendered against R. G. Atkinson and E. B. Houston, on May 9, 1896, for $11,847.79; and, third, the execution, with the marshal's return indorsed thereon, which was issued upon said judgment. We think, however, that this contention is untenable, since the testimony in question established certain relevant facts which were alleged in the complaint and were not specifically denied by the answer. It may be that it was unnecessary to have read the records in evidence, because the facts which they tended to prove were, in effect, admitted by the pleadings; but if the plaintiffs saw fit to establish the allegations of their complaint with greater certainty, by introducing the records, the defendants cannot be heard to complain. They were not prejudiced by the proof of facts which they had admitted.

The defendants further urge that error was committed by the trial court in permitting the plaintiffs to prove the following facts by parol testimony, namely: That, immediately after the decree dismissing the bill and dissolving the injunction had been entered, an interview took place between the judge of the trial court and counsel for the complainants and the defendants in said suit, and that in the course of said interview the judge of the trial court stated to counsel, in substance, that if an appeal was taken from said decree, as was then contemplated by the complainants in that case, it would not be necessary to make an order continuing the injunction in force pending the appeal, as he would not try the law case, nor permit it to be tried, during the pendency on appeal of the equity case which had been brought to enjoin further proceedings at law. It is strenuously urged that this testimony as to what occurred between the trial judge and counsel for the respective parties to the equity suit, who were also attorneys for the respective parties to the law case, was incompetent and prejudicial. We think otherwise. One of the defenses made by the sureties in the circuit court was that R. G. Atkinson and E. B. Houston, the principals in the injunction bond, were solvent on October 5, 1894, when the injunction was dissolved, and remained solvent for some time thereafter; that the plaintiffs below had failed to prosecute the action at law with due diligence after the injunction had ceased to be a hindrance, and by such neglect had occasioned the damages complained of, or at least enhanced the damages. In view of this defense, it was competent for the plaintiffs to show that they had exercised due diligence, and no better evidence of that fact could have been offered than the testimony in question, which showed that their failure to obtain a judgment in the suit at law at an earlier day was due altogether to the action of the judge of the trial court, who had refused to proceed with the hearing of the case until the decree in the equity case had been approved on appeal. Moreover, we are of opinion that the trial judge properly exercised his discretion in refusing to proceed with the trial of the action at law until it was finally decided whether the case was one which ought to be litigated in the forum of equity rather than at law.

The defendants below also contend that the plaintiffs did not use due diligence in making their defense to the equity case after an injunction was obtained against them, and certain instructions were asked and refused to the effect that, if the jury found that the plaintiffs had not used due diligence in that behalf, they might consider whether the loss which occurred during the period the suit was delayed was a damage such as was within the contemplation of the sureties when they signed the bond, and such as they ought to pay. We are satisfied, by an examination of the evidence upon that subject which was offered, that the trial court was justified in refusing these instructions. The equity case was commenced in December, 1887. The complainants in that case took either the whole or a part of their testimony during the year 1889, and the defendants, as it seems, took the deposition of one witness as late as February, 1893. The case was heard and taken under advisement some time between the latter date and the month of April, 1894. This is substantially all that the evidence offered by the defendants tended to show touching the charge that the plaintiffs unduly delayed the hearing of the equity case. There was no evidence that the complainants in that case, or their sureties, ever asked that the defendants be compelled to close their testimony within any specified period, or that they demanded an earlier hearing of the case, and that such earlier hearing was prevented by any improper conduct on the part of the defendants. As it is always competent for the complainant in a chancery suit to expedite the hearing by compelling the opposite party to close his proofs within a reasonable period, and submit to a trial, we must presume, in the absence of any showing that the complainants in the equity case, or their sureties, ever made an effort to speed the cause, that the case was not tried at an earlier date because both parties were willing that the hearing should be postponed. The testimony which was offered had no greater tendency to show that the defendants in the injunction suit had not used due diligence in defending it than it had to show that the plaintiffs had not used due diligence in prosecuting it. For these reasons we think that the trial court would have erred had it given instructions such as it was asked to give, which practically left the jury at liberty to find that the sureties had not contemplated that the injunction would continue in force for such a long period of time, and therefore that they were not liable for the damages which it had occasioned.

It is further contended by the sureties that the plaintiffs below were allowed to recover damages which were not occasioned by the injunction. In this behalf it is said, in substance, that in the complaint it was alleged that the principals in the bond became insolvent before the injunction was dissolved; that such averment was not true in point of fact; that the principals in the bond were solvent on October 5, 1894, when the injunction was dissolved, but subsequently became insolvent; and that by virtue of these facts the sureties are not responsible for the loss which the plaintiffs have sustained. It may be conceded that the sureties were liable only for such damages as were "sustained by reason of the injunction," for that is the precise language of the bond. But it does not follow

therefrom that because Atkinson and Houston, the principals in the bond, failed, or that their failure became known subsequent to October 5, 1894, therefore the injunction did not occasion the damage of which the plaintiffs complain. When the restraining order was dissolved the plaintiffs had no judgment which they could enforce by execution against the property of the judgment debtors, even if they were then solvent, because they had not submitted to a judgment at law as a condition precedent to the granting of the injunction. On October 5, 1894, the suit at law remained in the same condition in which it stood when further proceedings in the case were arrested by the restraining order. Two years elapsed after the dissolution of the order before the plaintiffs, in the exercise of reasonable diligence, could obtain a trial and judgment, and in the meantime the insolvency of the principals in the injunction bond had become apparent. If the suit at law had been allowed to run its course without interruption, it is highly probable, if not absolutely certain, that a judgment would have been recovered, and that it would have been paid long before October 5, 1894; but as the proceedings in that case were stayed by an act to which the sureties were a party, for a period of nearly seven years, and in the end the defendants in that case proved to be insolvent, it is not unreasonable to attribute the loss which the plaintiffs have sustained to the existence of the injunction. It is ordinarily the province of a jury to determine what was the proximate cause of a loss or injury that has been sustained (Railway Co. v. Kellogg, 94 U. S. 469, 474); and in the present instance we think they were at liberty to find, as they appear to have done, that the plaintiffs sustained the damage complained of as the direct result of the injunction, even if it was true, as the defendants below contended, that Atkinson and Houston were solvent when the restraining order was dissolved. The evidence was of such a nature as to well warrant the conclusion that the principals in the bond and their sureties, by suing out an injunction, had set on foot a proceeding that had led naturally and inevitably to a loss of the greater part of the debt which the plaintiffs were attempting to collect.

In view of the testimony contained in the record, it can hardly be affirmed with certainty that the principals in the injunction bond were able to pay their debts in full on October 5, 1894; but, conceding such to have been the fact, it merely shows that the damages, if any, incident to the injunction, had not at that time become apparent. This concession differs materially from an admission that the damages complained of were not occasioned by the injunction. It frequently happens that the consequences of an act are not at once apparent, and that a litigant on the day of trial is able to show that certain damages have been sustained as the proximate result of a wrongful or a negligent act, which could not have been proven if the trial had occurred at an earlier day; but in such cases no court has ever as yet intimated that the right of recovery was limited to such damages as became manifest immediately after the wrongful act was committed. On the contrary, the rule is that a plaintiff is entitled to recover compensation for such damages as he can establish on the day of the trial, provided they were the proximate result of

the alleged wrongful or tortious act. Hayden v. Albee, 20 Minn. 159 (Gil. 143); Fort v. Railway Co., 2 Dill. 259, 268, Fed. Cas. No. 4,952; Hagan v. Riley, 13 Gray, 515, 516; Filer v. Railroad Co., 49 N. Y. 42; Suth. Dam. (2d Ed.) § 113, and cases there cited.

In the lower court the case was tried in substantial conformity with these views. Touching the question whether the injunction was the proximate cause of the damages that had been sustained, the, jury were instructed to the following effect: That it would not do for them to consider the financial status of Atkinson and Houston, and their ability to pay the plaintiffs' claim, solely when the injunction was dissolved; that it was necessary to likewise consider the sum which was recoverable from them on the plaintiffs' demand when the action at law was terminated, since it would be impossible to otherwise determine the amount of the plaintiffs' loss; that the liability of the sureties for the loss occasioned by the injunction continued until a final judgment had been rendered; and that the sureties were not relieved from such liability because the court in which the action at law was pending had refused to try it until the equity case was heard and determined on appeal, since by signing the bond they assumed the responsibility for a delay in the prosecution of the suit at law which was thus occasioned. The jury were further charged, in substance, that before the plaintiffs could recover they must show by convincing evidence that they had been damaged, how such damage had accrued, and that if they had been allowed to proceed with their action at law in the usual way, and had not been stopped by the injunction, they could have obtained a judgment against Atkinson and Houston and collected it. In other words, the jury were advised that, before they could render a judgment against the sureties, they must be satisfied that the damages sustained by the plaintiffs were the proximate result of the injunction. We perceive no material error in the manner in which this issue was submitted to the jury, when the instructions are read in the light of the testimony and are considered as a whole.

The point said to have been urged in the lower court, which is renewed here, namely, that, because the plaintiffs alleged in their complaint that Atkinson and Houston became insolvent prior to the dissolution of the injunction, they should have been held strictly to proof of that fact, and should not have been allowed to show that insolvency occurred afterwards, seems to us to be without merit. The averment as to the time when the principals in the bond became insolvent was an averment which was not required to be proven precisely as laid. The action being on a bond in which the sureties had bound themselves to pay the damages which might be sustained by reason of the injunction, it was only necessary to allege that damages had been sustained as the proximate result of the injunction. Whether such damages were the result of a failure which occurred prior to the dissolution of the restraining order, or so shortly afterwards that the plaintiffs could not make their debt, was immaterial. In either event, if they resulted from the injunction, the sureties were liable. The claim, therefore, that there was a material variance between the proof and the pleadings is untenable.

Neither are we able to perceive any merit in the motion made by the sureties, some time after the judgment against them was rendered, to credit that judgment with the sum of $4,975, which had been collected on execution from the principals in the bond. This collection was made before the trial, and was proven during the progress of the trial. The damages which were assessed by the jury represent the loss which the plaintiffs had sustained in excess of the sum already collected on execution from Atkinson and Houston, and did not exceed the amount of such loss. We can perceive no reason, therefore, why the credit claimed should have been allowed. The judgment of the circuit court is accordingly affirmed.

PHILIPS, District Judge (dissenting). I am unable to concur in the majority opinion. It extends the accountability of the sureties beyond the letter of their contract. The injunction bond is in the usual form in chancery proceedings. The undertaking was to pay "the damages, not exceeding $7,000, which may be sustained by reason of the injunction in this case, if it is finally decided that said injunction ought not to have been granted." When the injunction was dissolved, pending the suit in which it was granted, that was, in effect, a decision that it ought not to have been granted. No other damages were recoverable of the sureties than such as ensued "by reason of the injunction." The sureties stood in the relation of guarantors, and on well-established principles their liability is to be strictly construed, and not extended by any sort of implication. "The liability of a surety on an injunction bond must be strictly construed, and he cannot be held liable beyond the precise terms of his undertaking." 1 Beach, Inj. § 227. The implication of law is that in executing such bond the surety does it in the view which the established practice in courts of equity attaches to such proceeding. In Russell v. Farley, 105 U. S. 445, the court recognized the rule of practice to be that, on the dissolution of an injunction, the court may proceed instanter to assess damages on the injunction bond. So in Spell. Extr. Rel. § 931, it is said: "The liability of obligors on an injunction bond is confined to the damages and costs caused by the injunction and adjudged on its dissolution." But as the language of the text-books and the courts, like the meaning of words, must be "restrained unto the fitness of the matter," it is to be conceded to the special situation in this case that at the time of the dissolution of the injunction an immediate assessment of the damages might have been impracticable; yet it by no means follows that the sureties were bound for any such losses as ensued after the dissolution by reason of matters supervenient, over which they had no control. When the period of 30 days, prescribed by the order of court, during which the injunction should continue in force, expired, the relation of the sureties to the pending litigation ended. Proceeding in the law action pending in court was then no longer restrained by the injunction. The office of the injunction in that respect was at an end. The plaintiffs therein were at liberty to proceed with the prosecution of the law action to judgment. From every consideration of justice, the duty was then imposed upon the beneficiary of the

injunction bond to exercise every reasonable diligence and precaution to lessen the loss to be claimed from the sureties. Trust Co. v. Stewart (Mo. Sup.) 21 S. W. 796. So in 2 Suth. Dam. p. 65, it is said:

"When an injunction has been improvidently granted or obtained without good cause, the defendant should take seasonable steps to relieve himself from its operation, and thus prevent damages. A party who slept upon his rights and neglected his duty, so that the demand enjoined became barred by the statute of limitations before he finally made a successful motion to dissolve the injunction, was not permitted to recover on the bond for that loss."

The vital error, in my opinion, into which the majority of the court has fallen, is in treating the case as if the sureties were parties to the law case, with the right and duty of expediting the trial therein after the dissolution of the injunction. Such was not the case. Therefore they had no standing in court to move to bring to early trial the cause. As plaintiffs therein were interested parties in having a judgment, it was their right to demand a trial, as it was a duty imposed upon them by every consideration of fair dealing towards the sureties to bring on the trial at the earliest date possible, in order that an execution might go to reach the property of the defendants.

Neither can I assent to the proposition that the sureties should be bound as a consequence of their undertaking for any supposed omission of the defendants to demand a speedy trial in the law action. As said in Sensenig v. Perry, 113 Pa. St. 117, 5 Atl. 11: "No damages, except such as flow directly from the injunction as its immediate consequences, are recoverable, for liability upon the injunction bond is limited to such damages as arise from the suspension or invasion of vested legal rights by the injunction." And out of this rule comes the doctrine that damages assessable upon an injunction bond are only such as "are the actual, natural, and proximate result of the wrong committed." 2 High, Inj. 1663; 10 Am. & Eng. Enc. Law, 995; Holloway v. Holloway, 103 Mo. 284, 15 S. W. 536. The sureties had no control over the action of their principals in the bond after the dissolution of the injunction; and, as they were bound only for such damages as were the direct and natural result of the injunction, the direct connection between the granting of the injunction and any lack of insistence on the trial of the law action is entirely wanting.

But, on the other hand, what of the conduct of the plaintiffs, viewed in the light of their duty to the sureties as above established by the authorities? The injunction was finally dissolved on the 30th day of October, 1894, to be continued in force 30 days thereafter, but the trial of the law case was not brought on until December 4, 1896. And what excuse is given by plaintiffs for these extraordinary delays? The trial court, over the objection of defendants, permitted the plaintiffs to introduce in evidence a conversation, in pais, had, in the absence of these defendants, between one of the attorneys for plaintiffs and the judge of the district court, the substance of which was that some months after the dissolution of the injunction this attorney had a personal interview with Judge Williams, judge of the United States district court, in which the attorney expressed a desire to have the law case brought to trial at the earliest date prac-

ticable, whereat the judge stated to him that he would not try the law case until the court of appeals had passed upon the case pending there on the bill in equity filed by the defendants, and that thereafter counsel for plaintiffs took no further action in the matter until after the end of the case pending in the court of appeals. Was this evidence competent against these sureties? It was not a matter occurring in open court. Nor were the sureties present nor had they any notice thereof. In a law case the court speaks only by the record. The judge can take no action respecting the case outside of court, except when specially authorized thereto by statute, which will bind or affect the interest of any person. The occasion and place for counsel to have called up the matter in question and urged the speeding of the trial was when the court was in session and in open court. The district judge when proceeding in the circuit court is then, and not out of court, in a case at law, clothed with the functions and charged with the responsibilities of the circuit court. What he should do on the bench in court, open to the public and to litigants, and what he might say in pais, are wholly different in their legal effect on the rights of other litigating parties. One carries with it the obligations of judicial responsibility; the other is non-judicial and without responsibility. One is ex cathedra; the other is a *brutum fulmen*.

Aside from this, upon what principle of law and justice can it be maintained that the mere election of the judge not to proceed to trial in the law case until the court of appeals had decided another case before it, should be permitted to extend the liability of the sureties to such a distant date as would suit the pleasure of the court and the parties to the law action to go to trial? The appeal was no longer dependent upon the fact of the injunction bond having been given. The injunction had been dissolved and the bond no longer operated as a supersedeas. Suppose the parties to that appeal had neglected for years to put the appeal on hearing, or for various causes incidental to such courts no decision had been reached in that case for five years, at the end of which the principals in the bond were found to be insolvent; would the sureties still be bound on the ground that such a contingency was the direct and natural consequence of the injunction bond? The trial court held, and the majority opinion sustains it, that it was none of these defendants' business (as it was a matter of court proceeding, which the sureties ought to have anticipated) whether or not the judge of the court saw fit to await the decision of the appellate court ad libitum. The underlying vice of such a proposition is the failure to observe the inflexible limitation which the law affixes to the undertaking of the surety. He is bound for no consequential damages which are not the natural and direct result of his act in executing the bond, such as in the ordinary, usual, and lawful course of judicial procedure in the case might have been reasonably anticipated. He is not held to have anticipated that the court or litigants after the dissolution of the injunction would do anything in the course of proceeding other than what the law required or permitted. As the parties and the court, on the dissolution of the injunction, were free, so far as the injunction was

concerned, to proceed at once to trial and judgment in the law case, it was not the result of the injunction that the district judge should decline to proceed to trial because he preferred to wait and see what the court of appeals would decide in another case.

It not infrequently happens that the trial judge holds up for a long period the trial and decision of a cause pending, awaiting the determination of a like question in some higher court. But it has never been held by courts of ultimate authority that he could do this to the injury of the bondsmen in an injunction who were helpless to compel him to act. However conservative the district judge in his purpose in awaiting the decision of the court of appeals, he had no such judicial discretion as could in one degree extend the liability of the collateral conditional undertaking of these bondsmen. And when the proof of this extra judicial action of the district judge was offered the surety had just right to say, "Non hæc in fœdera veni." It will not do to say that this was harmless error. There was evidence sufficient to go to the jury to have warranted them in finding that, if the judgment in this case had been timely taken after the dissolution of the injunction, more money could have been realized on the execution against the judgment debtors than was ultimately recovered. Neither counsel for plaintiffs below nor the trial court put the ruling upon any such ground. But, both in ruling upon the objection to the admissibility of this conversation between the attorney and the judge and in the charge to the jury, the court expressly told the jury that it was none of the defendants' business what was the result of the action of the judge of the court in declining to put the case to trial. The excellent lawyers who brought this action on the injunction bond recognized the principle of law that sureties were only bound for such loss as was occasioned by the injunction, and therefore they alleged in the petition that the principals in said bond had become insolvent before the dissolution of the injunction. This allegation was disproved by the fact that on the execution issued on the final judgment over $4,000 were realized out of the property of the principals. And notwithstanding the limit of liability of the sureties was fixed, by the bond at $7,000, after the collection of this $4,000 and more, the liability of the sureties on the judgment was assessed at $7,000, which was brought about by charging the sureties with accumulated interest on the debt for a number of years after the dissolution of the injunction. I think the court erred in admitting the testimony respecting the interview between plaintiffs' attorney and Judge Williams, and that the court erred in its charge to the jury in respect of the delay in prosecuting the law action as to its effect on the liability of the sureties, and that the judgment should be reversed, and a new trial ordered.