# HUTCHINS *v.* MUNN.

EQUITY PRACTICE; INJUNCTIONS; AUDITOR; DAMAGES.

1. Want or insufficiency of service of process in a suit for an injunction
   is cured by appearance and answer of the defendant; and where there
   is an appearance by an attorney, a subsequent answer by the defend-
   ant, filed by the same attorney, will be a ratification of the act of the
   attorney in entering his appearance, and relate back to the original
   appearance.

2. One is bound to obey an injunction, whether he be a party to the
   suit or not, where he has actual notice of it, irrespective of whether
   he was served with a copy of it.

3. The findings of the auditor, concurred in by the court below, are to
   be taken as presumptively correct, and will, on appeal, be permitted

to stand, unless some obvious error has intervened in the application
of the law or the principles of the decree under which he acts, or
some important mistake has been made in the evidence, which has
been clearly pointed out and made manifest. (Following *Richardson*
v. *Van Auken,* 5 App. D. C. 209; *Grafton* v. *Paine,* 7 App. D. C. 255;
and *Smith* v. *American Bonding & T. Co.* 12 App. D. C. 192.)

4. Where a restraining order obtained in August, enjoining the owner
of a dwelling house from continuing the work of erecting an addi-
tion thereto, is dissolved in November, an award of $6,000 by the
auditor, confirmed by the lower court, in a proceeding to ascertain
and determine the damages suffered by the wrongful suing out of
the injunction, based upon the rental value of the house during the
succeeding winter season, will not be disturbed on appeal, where it
appears that the award fairly represents such rental value; that the
entire house was rendered uninhabitable by the work, which was
stopped by the injunction; that no unnecessary delay occurred in
completing the work, which continued during such season; and that
the owner was prevented from occupying the house during the pro-
gress of the work; and it is immaterial that the owner did not return
to the city and rent a similar house for the season.

No. 1680.    Submitted October 18, 1906.    Decided November 7, 1906.

HEARING on an appeal by the complainant and the sureties
on an injunction undertaking given by him, from a decree of
the Supreme Court of the District of Columbia, ratifying and
confirming a report of the auditor, ascertaining and fixing the
amount of damages sustained by the defendant for wrongfully
suing out of the injunction.    *Affirmed.*

The COURT in the opinion stated the facts as follows:

Appeal from a decree of the supreme court of the District of
Columbia, confirming an auditor's report on the question of
damages sustained by appellee by reason of the injunction
wrongfully and inequitably obtained by appellant.

The appellee, Carrie L. Munn, in 1888 purchased the house
and premises known as No. 1601 Massachusetts avenue, N. W.
the consideration being $70,000. This house is located at the
corner of 16th street, N. W., and fronts on the avenue. As orig-

inally constructed its west wall extended to within 12½ feet of the west line of the lot. Adjoining the Munn premises on the west was the house of appellant, Stilson Hutchins. The east wall of the Hutchins house, for a distance of 28 feet from the northwest corner of the Munn lot, covered the dividing line between the two lots, and, under the building regulations of the District, was a party wall for that distance. After purchasing her house Mrs. Munn built two one-story additions to the house, consisting of a billiard room and conservatory. These additions were on the northwest corner of the lot, and in their construction she used and paid for so much of said party wall as was needed. The construction of these additions still left a vacant space fronting Massachusetts avenue 12½ feet wide and 34 feet deep. Sometime in the spring of 1902 Mrs. Munn decided to enlarge her house, so that it would practically cover this vacant space, and in furtherance of this project engaged the services of a skilful architect and a competent builder, and intrusted the undertaking to them. She then went to Europe, accompanied by her husband and family. The addition to her house was to be of brick to correspond with the house itself, and to be three stories high. For a ground plan of this addition, see *Hutchins* v. *Munn,* 22 App. D. C. 92. The work was commenced about July 1, 1902, and was to be entirely completed within four months from that time, which would have enabled the Munn family to return and occupy the house during the winter season, as they had planned to do. The work was progressing satisfactorily, when, on August 14, 1902, appellant filed his petition in the supreme court of the District of Columbia against the Munns and James G. Hill, the architect, and William P. Lipscomb, the builder, and on the same day a temporary order was issued that "the defendants, and each of them, be restrained and enjoined from continuing the erection of the addition" above described. The defendants Hill and Lipscomb were served with process, and work was, of course, immediately discontinued. In conformity with the rules of court, an undertaking was filed, conditioned "to make

VOL. XXVIII.—18.

good all damages suffered or sustained by reason of wrongfully and inequitably suing out the injunction." The plan for the addition contemplated the removal of a considerable portion of the wall of the main building adjacent thereto, and, *when the restraining order was issued, this portion of the wall had been removed,* and the foundation walls of the addition were even with the surface of the ground. On August 17, 1902, notice was given Brandenburg & Brandenburg, solicitors for petitioner, that on August 21, or as soon thereafter as counsel could be heard, a motion was to be made to discharge the rule to show cause and to dissolve the temporary injunction. This notice was signed by Samuel Maddox and H. Prescott Gatley, *"as attorneys for defendants,"* and service of same was acknowledged August 17, 1902, by Brandenburg & Brandenburg, and W. D. Waugh, solicitors for petitioner. The above motion to discharge the rule, etc., was filed by Mr. Maddox and Mr. Gatley, *"as attorneys for defendants."* Mrs. Munn, who was then in Europe, received actual notice of the injunction from her attorney, Mr. Maddox, shortly after it was issued. She made arrangements with her husband that he should return to the United States for the purpose of filing an answer to the bill, and for the purpose of representing her generally in the matter. On October 30, 1902, a joint and several answer was filed by the Munns to every material allegation in the bill, and on November 25, 1902, after hearing, the supreme court of the District of Columbia dissolved the temporary injunction, discharged the rule to show cause, and dismissed the bill. An appeal was prosecuted to this court by Mr. Hutchins, and on May 6, 1903, the decree of the court below was confirmed. *Hutchins* v. *Munn, supra.* On May 28, 1903, the supreme court of the District referred the matter to the auditor of that court to ascertain and report the damages, if any, suffered by reason of the wrongful suing out of said injunction. The auditor on February 18, 1905, made a report, and on December 15, 1905, a second or supplemental report. These reports were ratified and approved by the court below, and a decree entered

that Mr. Hutchins and his sureties pay Mrs. Munn $6,000 damages, together with costs.

From that decree this appeal was taken.

*Mr. Edwin C. Brandenburg, Mr. Clarence A. Brandenburg,* and *Mr. F. Walter Brandenburg,* for the appellants:

1. One cannot recover damages, on an injunction undertaking, for an injury which he might by reasonable precaution or exertion have avoided, or which, by reason of lack of reasonable diligence, have been unreasonably increased. Sedgwick, Damages, secs. 201, 526; *Mack* v. *Jackson,* 9 Colo. 537; *Alliance Trust Co.* v. *Stewart,* 115 Mo. 245; 8 Am. & Eng. Enc. Law, pp. 605, 606; *Warren* v. *Stoddart,* 105 U. S. 224; Sutherland, Damages, sec. 88.

2. And the same rule of law, imposing upon a defendant due diligence in efforts to lessen damages, imposes upon him the *duty of taking reasonable steps to relieve himself of an injunction,* if thereby the damages may be materially lessened. Sutherland, Damages, last ed., sec. 524.

3. Assuming that the condition of the main or old building was in fact and wholly due to the suspension of the work on the three-story addition by the injunction, nevertheless almost the entire house was inhabitable during the entire season, or could have been made so in a short time at nominal cost.

4. Upon the testimony, the allowance at the rate of $8,000 per annum for the Munn house was excessive, and the rate should not have been more than $5,000 or $6,000 for the year.

5. The auditor erred in allowing for a season's rental of the Munn house.

6. The auditor erred in adopting as the measure of damages the rental value of the Munn dwelling. The injunction did not relate to the main dwelling, nor did it interfere with its use, nor did it prevent the defendants from doing anything that would make it habitable pending this litigation. The injunction merely *restrained the completion of the new addi-*

*tion* so far as the west wall affected the light and air of the complainant. The interference with the enjoyment of the main building was not the direct and immediate effect of the suspension of work on the addition. High, Injunctions, sec. 1663; Sutherland, Damages, sec. 868; *Smith* v. *Day*, L. R., 21 Ch. Div. 421; *The Conqueror*, 166 U. S. 110, 40 Barb. 175.

7. The injunction undertaking should not be enforced in this case. The power to impose a bond as a condition for the injunction carried with it the power to relieve or mitigate the liability thereunder, in the exercise of a sound discretion by the court. *Russell* v. *Farley*, 105 U. S. 442; *Leslie* v. *Brown*, 32 C. C. A. 556; *Tyler Min. Co.* v. *Last Chance Min. Co.* 32 C. C. A. 498.

It would be inequitable, under the circumstances of this case, to enforce any liability on the injunction undertaking. We have a case in which the principal defendant, who claims the damages, was abroad, not within the jurisdiction of the court, not served with process, not served with the injunction and not entering her appearance or filing her answer until October 30, *two months and a half* after the injunction was granted, though she had notice of it in August; we have a case in which the record does not show that she suffered the slightest inconvenience or was subjected to the slightest loss by reason of the injunction; we have a case in which her representatives engaged in the construction of the building manifested no diligence whatever in the prosecution of the work; a case in which the work enjoined was not the only work in progress, and, therefore, not the sole cause of the condition of the principal building; a case in which the extension of the west wall of the new building was enjoined, and an allowance for the rental value of an adjacent building, the use of which was not enjoined; a case in which the entire *new building cost* $6,900, *with liberal fees to architect and builder, and the allowance made for alleged damages of* $6,000. We therefore submit that this case is one in which there should be no allowance for damages, and particularly for damages for alleged loss of rental value, no other damages being shown.

*Mr. Samuel Maddox* and *Mr. H. Prescott Gatley* for the appellee.

Mr. Justice ROBB delivered the opinion of the Court:

1. It is urged that the court below erred "in finding and holding that the defendant, Mrs. Munn, was enjoined, and therefore entitled to any damages whatever on the injunction undertaking." So far as the record discloses, this is the first time since the inception of this litigation, in August, 1902, that it has been contended that Mrs. Munn was not properly before the court and subject to the restraining order so long as that order was in force. Within three days after the order was issued, notice was given the solicitors for the complainant by Mr. Maddox and Mr. Gatley, as attorneys for defendants, that they would shortly move to dissolve the injunction. Mrs. Munn testified that she was notified of the restraining order by Mr. Maddox in August, 1902, which must have been within two weeks from the time it was issued. Mr. Munn soon thereafter returned to the United States, and Mr. Maddox filed a joint and several answer for Mr. and Mrs. Munn, to which no objection was made. That appellant's solicitors then understood and believed that Mr. Maddox was fully authorized to enter an appearance in behalf of all the defendants is apparent from the fact that no effort appears to have been made to serve Mr. Munn with process while he was in the United States. We think the appearance of Mr. Maddox and Mr. Gatley for the Munns was a waiver of actual service,—especially as all doubt was removed as to their authority to enter such an appearance by the filing of the above answer on October 30, which must be held to be a ratification of the authority previously exercised, and to relate back to the original appearance.

Want or insufficiency of service of process in an action for injunction is cured by appearance and plea of defendant. *Underwood* v. *Wood,* 93 Ky. 177, 15 L.R.A. 825, 19 S. W. 405; *Cooley* v. *Lawrence,* 5 Duer, 605; *Parker* v. *Williams,* 4 Paige, 439; *Seebor* v. *Hess,* 5 Paige, 85.

Although notice of an application for injunction is required by statute, it is waived by a voluntary appearance. 10 Enc. Pl. & Pr. p. 999.

Moreover, we cannot assent to the proposition that a defendant may have actual knowledge of the issuance of an injunction, and disobey it with impunity. We think the authorities are to the contrary. In the case *Re Lennon,* 166 U. S. 554, 41 L. ed. 1113, 17 Sup. Ct. Rep. 658, the court, through Mr. Justice Brown, said: "The facts that petitioner was not a party to such suit, nor served with process of subpœna, nor had notice of the application made by the complainant for the mandatory injunction, nor was served by the officers of the court with such injunction, are immaterial, so long as it was made to appear that he had notice of the issuing of an injunction by the court. To render a person amenable to an injunction, it is neither necessary that he should have been a party to the suit in which the injunction was issued, nor to have been actually served with a copy of it, so long as he appears to have had actual notice. High, Inj. sec. 1444; *Mead* v. *Norris,* 21 Wis. 312; *Wellesley* v. *Mornington,* 11 Beav. 181."

In *Ulman* v. *Ritter,* 72 Fed. 1000, this question was discussed, and the court said: "The counsel for defendant seek to relieve him from the responsibility of his conduct in this respect, contending that knowledge thus acquired, of the existence of the injunction, had no legal and binding effect upon him. I cannot agree with them in their position, and I am unable to find, either in the text-books or adjudicated cases, any authority to sustain such a position. If such a position could be maintained, it would destroy to a great extent the effect of the restraining powers of courts of equity, and their usefulness would be greatly impaired. I hold the unquestioned law to be that an injunction becomes operative from the time the order was made, and effective upon the party from the time he has notice of its existence. It is a matter of no moment how the defendant acquired the information of its existence. When

once he has been apprised of the fact, he is legally bound to desist from doing what he is restrained and inhibited from doing. If this were not the rule, often great injury could be inflicted, in numberless cases, though the mandate of the court was in existence." See also *Ex parte Richards,* 117 Fed. 658; *State* v. *Knight,* 3 S. D. 509, 44 Am. St. Rep. 809, 54 N. W. 412; *Winslow* v. *Nayson,* 113 Mass. 419; *Golden Gate Consol. Hydraulic Min. Co.* v. *Superior Court,* 65 Cal. 187, 3 Pac. 628; *Burr* v. *Kimbark,* 29 Fed. 428; *Edwards* v. *Edwards,* 31 Ill. 474.

Holding, as we do, that Mrs. Munn was properly before the court and subject to the restraining order, it necessarily follows that she was entitled to recover any damages "suffered or sustained by reason of wrongfully and inequitably suing out the injunction."

2. The other assignments of error may be considered together, as they all relate to the finding of the auditor that the measure of damages was the value of the use of the property during the season of deprivation; that is, from about November 1 to March 1, notwithstanding that the injunction was dissolved in November.

In approaching this question we must have in mind the functions of an auditor, and the weight and consideration to be given his findings. As was said by this court in *Richardson* v. *Van Auken,* 5 App. D. C. 209: "The findings of a master or an auditor, concurred in by the court below, are to be taken as presumptively correct, and will be permitted to stand, unless some obvious error has intervened in the application of the law or the principles of the decree under which he acts, or some important mistake has been made in the evidence, and which has been clearly pointed out and made manifest. This rule has been repeatedly affirmed by the Supreme Court of the United States, and is one of general application in the equity practice, both in the Federal and State courts of the country. *Tilghman* v. *Proctor,* 125 U. S. 136, 31 L. ed. 664, 8 Sup. Ct. Rep. 894; *Evans* v. *State Nat. Bank,* 141 U. S. 107, 35 L. ed. 654, 11 Sup. Ct.

Rep. 885; *Crawford* v. *Neal,* 144 U. S. 585, 36 L. ed. 552, 12 Sup. Ct. Rep. 759; *Furrier* v. *Ferris,* 145 U. S. 132, 36 L. ed. 649, 12 Sup. Ct. Rep. 821." The question was also discussed in *Smith* v. *American Bonding & T. Co.* 12 App. D. C. 192, the court saying: "The auditor is not a mere examiner in chancery, to take testimony for the convenience of the court, and to return it to the court for its consideration. The auditor is a judicial officer, charged with judicial functions; as has been repeatedly decided; and his findings of facts are analogous to the verdict of a jury in a suit at common law. Such findings of fact are conclusive, unless their correctness is impugned under proper proceedings for the purpose. \* \* \* In the order of reference there was no requirement that the testimony, which the auditor was directed to take in order to enable him to reach a determination, should be returned to the court, or made part of his report; and it may well be questioned whether the fact that he returned the testimony with his report justifies its being considered as part of his report. \* \* \* It is well settled that, in reference to findings of fact by an auditor or master in chancery, his conclusions, 'depending upon the weighing of conflicting testimony, have every reasonable presumption in their favor, and are not to be set aside or modified, unless there clearly appears to have been error or mistake on his part.' (*Tilghman* v. *Proctor,* 125 U. S. 136, 149, 31 L. ed. 664, 668, 8 Sup. Ct. Rep. 894), which rule was repeated in the case of *Callaghan* v. *Myers,* 128 U. S. 617, 32 L. ed. 547, 9 Sup. Ct. Rep. 177. In the case of *Richardson* v. *Van Auken,* 5 App. D. C. 209, 213, and again in the case of *Grafton* v. *Paine,* 7 App. D. C. 255, as well as in some subsequent cases, we have had occasion to enforce this same rule." See also *Grafton* v. *Paine, supra; Haller* v. *Clark,* 21 D. C. 128; *York* v. *Tyler,* 21 D. C. 265; *Sheffield & B. Coal, Iron & R. Co.* v. *Gordon,* 151 U. S. 285, 38 L. ed. 164, 14 Sup. Ct. Rep. 343.

In his first report the auditor found "that this property was purchased by Mrs. Munn some years ago, at a cost of $70,000, and that since that time sundry improvements or additions have

been constructed at a substantial cost. The house was purchased and maintained for the occupation of Mrs. Munn and her family, and was furnished in a style corresponding to its character and size. It was the practice of the family to occupy the house from the fall until the late spring and for the remainder of the year they spent the time at other localities in this country, or abroad. *The progress of the work on this addition at the date of the restraining order was such as to render the house for dwelling purposes practically uninhabitable.* * * * Taking up the claim for the loss of the use of the property resulting from the restraining order, it appears in proof that the work on the addition to the main house was commenced the first week in July, and was intended to be completed in four months, which would have brought the completion to the early part of November, *in time for the family to resume their occupation.* At the date of the restraining order, approximately a month and a half of the estimated time had elapsed and a proportionate part of the work done. The work was then suspended until the decree of this court, on the 25th of November, dissolving the restraining order, so that three months and ten days of useful time of this character of work had been wasted. The building of the addition was not completed and the house ready for suitable occupancy until late in April or very early in May of 1903, near the time at which it was the custom of the family to leave Washington for their summering. They were therefore deprived of the use of the property for the entire season of customary occupation. * * * That there is a Washington season which affects the rental term and occupancy of a certain class of property is a fact so generally known as to come nearly, if not quite within the scope of judicial notice. The property in question is of that class. The so-called season was the customary period of occupation by Mrs. Munn and her family. The claimant Mrs. Munn is entitled to the value of the use of the property during the season of deprivation, and the evidence is to be applied to that period, not solely for the purpose of showing what she lost as rent or income, but to determine what

it would have cost her to procure the use of other property approaching her own in location, condition, and equipment, during such time. Taking the estimate of the several witnesses touching the rental value of Mrs. Munn's property, I find a fair mean to be the sum of $8,000 per annum, of which I find three fourths—being $6,000—to be the reasonable value of the use of the property for the period during which she was deprived of its use by reason of the injunction."

Because the auditor found in this report that Mrs. Munn was not responsible for delay in the progress of the work after the dissolution of the restraining order, she having employed a competent architect and a competent builder to superintend the work, the case was again submitted to him to find "whether there was any lack of reasonable diligence, and, if so, what damages she (Mrs. Munn) has sustained upon that basis." In this second report the auditor, after a consideration of the testimony, said: "If it be assumed, as I find, that no unreasonable delay occurred prior to the 1st of January, another month's work would have brought it to the 1st of March, and would have completed the builder's estimate of the two and a half months. Even if the work had been completed at that time, it is very evident that the property could not have been rented, and the entire rental season would have been lost. If Mrs. Munn had waited until that time to occupy the residence, she would have been without her home during all the period from November to March by the fault of the complainant Hutchins. If in the month of November, when the work was resumed, she had found and leased other property substantially the same in character, equipment, and location, and desired to occupy it till her own residence should be finished, she would have been compelled to pay the full season's or year's rental. So that, in either event, the injury suffered by her in being deprived of the use of her residence was practically consummated before the 1st of November." The auditor therefore adhered to his original finding as to the damages sustained by Mrs. Munn. The record shows that he carefully considered and gave due weight to all the evidence

submitted to him, and in a case like this, where his report has
been ratified and confirmed by the court below, we are not dis-
posed to disturb the findings therein, unless fully convinced
such findings are not sustained by the evidence, or that they
are predicated upon an erroneous view of the law.   Doubts as
to the findings of an auditor certainly should not be resolved
against the injured party and in favor of the party causing such
injury.   We have carefully examined the whole record, and
have reached the conclusion that the auditor's findings are jus-
tified by the evidence.   Mrs. Munn testified, and her testimony
was not disproved, that her plans, by reason of the delay caused
by the restraining order, "were decidedly changed;   *   *   *
as this restraining order was not dissolved until the 21st of No-
vember the building then had to go on, and it prevented us from
occupying our house until late in the spring."

On cross-examination she was asked:

Q. Now, Mrs. Munn, in the fall of 1902 was it not your in-
tention to remain in Europe that fall?

A. That was not our intention so far as I know anything
about it.   We had our cabins engaged to return to Washington
and had to give them up, perhaps at a sacrifice.

Q. You know that of your personal knowledge?

A. Yes.

It seems to us, therefore, that the auditor, from this and other
testimony, was justified in finding that the Munn family in-
tended to return to Washington and occupy their home during
the winter of 1902-03.   We think the finding of the auditor
that there was a delay, "roughly estimated at about thirty days,"
in the progress of the work after the injunction was dissolved,
was a very liberal finding in favor of the appellant, in view
of the fact that it would have taken two months and a half to
complete the work during the period when the work could have
been advantageously prosecuted; that is, from the middle of Au-
gust, when the work was stopped by the injunction, until the
1st of November.   Considering all the testimony, and having
in mind the character and quality of the work, and that it had

to be prosecuted during the winter months, we are unable to say that there was any unnecessary delay. The addition Mrs. Munn planned was to be perfect in execution and in keeping with the house itself. She engaged skilful and competent men to prosecute the work, and instructed them to procure the best materials obtainable. She had a right to expect and to receive a satisfactory and adequate return for her money, and Mr. Hutchins ought not to be heard to complain because the work, after the dissolution of the restraining order, was not prosecuted with as much haste as it could, and, no doubt, would, have been prosecuted during the months of September and October. The auditor found, however, that, even though the house had been completed early in March, the damages suffered by Mrs. Munn would have been the same, because it would have cost her as much to rent a similar house from November to that time as for the season.

While the amount awarded seems large, we are unable to find from the evidence that it is excessive. The property, aside from the furnishings of the house, represented an investment of more than $100,000, and the finding was based upon the testimony of witnesses familiar with the rental value of similar houses in the locality of the Munn house.

The point is made that, in no event, could Mrs. Munn recover damages for the loss of the use of the whole house, because she was restrained from building the addition only. We think this contention untenable. Mr. Hutchins delayed action a month and a half, and did not arrest the progress of the work until the main house, as the auditor found, had been rendered "practically uninhabitable" by the removal of a considerable portion of the outside wall adjacent to the addition, and because of and in connection with the construction of the addition. The house continued to be uninhabitable, that is, unsuitable for the purposes of a family dwelling, until the addition was completed, and, inasmuch as the completion of the addition was stayed through the procurement of the restraining order, we think Mr. Hutchins must make good the damages directly resulting therefrom.

Objection is made that Mrs. Munn is not entitled to damages, because she did not in fact return to Washington, and in fact rent a similar house for the season. It appearing that Mrs. Munn, but for this injunction, would have returned to occupy her house during the season, we think she is entitled to damages for being kept out of it, notwithstanding she did not elect to live in some other similar house in Washington during that period. It was for her to determine whether she would occupy some other house in Washington, or whether, being kept out of her own house by the wrongful act of the appellant, she would live elsewhere during the winter of 1902-03; and the appellant is not in a position to complain because she chose the latter course. "Where a party is restrained, by an injunction wrongfully sued out, from exercising acts of ownership over land, he will be entitled to such damages as are the necessary and proximate result of that deprivation. In determining their extent, the court proceeds upon equitable principles, and is not governed by arbitrary or technical rules." 16 Am. & Eng. Enc. Law, 2d ed. p. 466.

The case of *Edwards* v. *Edwards,* 31 Ill. 474, was an action of debt upon an injunction bond. The plaintiff, by reason of the injunction, had been deprived of the use and enjoyment of certain property from March to September following, and in the opinion in that case the court observed: "The principal question, however, on the assessment of damages, is as to the use of the land. The injunction was issued early in the spring, and was dissolved in September, and during that time restrained the party from taking possession of a [certain] farm. The defendants insisted that the measure of damages was the value of the use of the land up to the time when the injunction was dissolved. We think the court properly allowed the evidence to take a wider range, and show that being kept out of the land till the 1st of September, occasioned the loss of the crops for the season. The question is not, what the land was worth to the complainant in the injunction suit, but what was the damage to the defendant for being kept out of possession during that period?"

In *Smith* v. *Wells,* 46 Miss. 64, which was a suit on an injunction bond, the court said: "The loss of the use and rental of the premises for a year was the result of suing out the writ; or, at all events, the jury have certified that damages to the extent of the value of one year's rent has ensued. But for the interference of the complainant, Mrs. Wells or her tenants would have occupied the premises, or she would have recovered possession, perhaps in time to have made them available. * * * The party injured by the injunction is entitled to compensation for all loss and injury, naturally and fairly referable to the wrongful act of the obligor." See also *Lange* v. *Wagner,* 52 Md. 310, 36 Am. Rep. 380; *Banks* v. *State,* 62 Md. 88; *Hicks* v. *Herring,* 17 Cal. 566; *Roberts* v. *White,* 73 N. Y. 375; *Alexander* v. *Colcord,* 85 Ill. 323; *Jones* v. *Allen,* 29 C. C. A. 318, 56 U. S. App. 529, 85 Fed. 523.

Appellant in his brief refers to the admiralty case of *The Conqueror,* 166 U. S. 110, 41 L. ed. 937, 17 Sup. Ct. Rep. 510, as being in point on this question of the assessment of damages. That case was a libel to recover possession of the steam yacht Conqueror, which had been illegally detained by the collector of customs for the district of New York, and for damages for the illegal detention. It appears that the vessel *was designed for pleasure only,* and had never been put to any other use. The court said: "The main question in this case turns upon the proper measure of damages. In the amount of $21,742.24, awarded by the final decree of the district court, was included the sum of $15,000, 'for loss of use of boat while detained by the respondent, from August 27, 1891, to February 3, 1892, at $100 per day.' This is the principal item of damage to which objection is made in this court." After directing attention to the fact that damages caused by an illegal seizure of a ship are in the nature of demurrage, and that, therefore, there must be actual loss in order to warrant a recovery, the court further said: "The difficulty is in determining when the vessel has lost profits, and the amount thereof. The best evidence of damage suffered by detention is the sum for which

vessels of the same size and class can be chartered in the market. Obviously, however, this criterion cannot be often applied, as it is only in the larger ports that there can be said to be a market price for the use of vessels, particularly if there be any peculiarity in their construction which limits their employment to a single purpose. In the absence of such market value, the value of her use to her owner in the business in which she was engaged at the time of the collision is a proper basis for estimating damages for detention, and the books of the owner showing her earnings about the time of her collision are competent evidence of her probable earnings during the time of her detention. * * * Again, the court may properly take judicial notice of the fact that the yachting season in our northern waters practically comes to an end before the first of November, and, as The Conqueror was seized on August 27, during more than one half the time for which demurrage was allowed she probably would have been laid up at her wharf. It is true, there was a possibility that her owner might have desired her for use in a winter's cruise to tropical waters; but there was not the slightest evidence of that, and the contingency of her being so used was too remote to justify an allowance upon that basis."

We think there is a clear distinction between the case of The Conqueror and the case at bar. The Conqueror was a pleasure yacht only, and there was no evidence that her owner intended to use her during the period she was held by the collector. Moreover, she had been seized by an officer of the United States in the line of his duty, and, although it subsequently transpired that he had acted under a misapprehension of the law, the circumstances of the case demanded that clear, positive, and certain proof of actual loss be adduced to entitle her owner to recover damages for her detention.

In the present case we are dealing with a dwelling house and the home of the injured party. The testimony not only shows the value of the use of similar homes, but it shows that Mrs. Munn would have occupied and received benefit from her home, but for the injunction wrongfully procured by appellant.

The damages awarded her were, we think, the direct result of the injunction, and comprehended within the terms of the undertaking entered into by appellant and his sureties "to make good all damages suffered or sustained by reason of wrongfully and inequitably suing out the injunction."

The decree appealed from, in our opinion, should be affirmed, with costs, and it is so ordered. *Affirmed.*